OPINION OF THE COURT
Edwin Margolis, J.
Claimant William Huzar, a former correction officer, seeks to recover money damages for injuries allegedly inflicted on him when his employer, the State of New York, controverted his stress-related claim for workers’ compensation benefits and engaged in other injurious action in connection with the termination of his job. Although four specific causes of action are asserted in the amended claim for claim No. 72180,[1] in response to this motion counsel for claimant has refined the focus of the allegations to encompass two causes of action: intentional infliction of emotional distress (the second cause of action) and prima facie tort/bad faith breach of the employment relationship (the third cause of action).[2]
Claimant was a correction officer at Great Meadow Correctional Facility for a number of years. In 1982 he was seriously injured by inmates and held hostage during a riot that took place in the prison. As a result of that injury, claimant was diagnosed as suffering from posttraumatic stress disorder and was granted 180 days’ disability by the Workers’ Compensation Board (WCB).
On August 23, 1985, claimant was involved in a much less serious scuffle with an inmate and received a minor injury to *372 his arm. The physical injury was so slight that the examining doctor told him to return to work in two days. Instead of returning, however, claimant applied for workers’ compensation disability benefits, asserting that the 1985 incident had resulted in a reoccurrence of his posttraumatic stress disorder. This time the Department of Correctional Services (DOCS) controverted the claim of disability. Claimant was informed by various DOCS officials that, except when a correction officer has been taken hostage, all stress-related claims are controverted as a matter of policy. These officials indicated that they viewed working in a State prison as a correction officer to be a very stressful job and reasoned that if they didn’t initially controvert stress-related claims there soon would be a multitude of correction officers on stress-related disability leave.[3]
Counsel for defendants move for dismissal on the ground that the State’s policy decision to controvert claimant’s workers’ compensation claim is immune from liability because it was discretionary in nature. In addition, for any actions that would not be protected by immunity, he moves for dismissal on the ground that the amended claim does not allege facts which, if proved at trial, would establish either intentional infliction of emotional distress or "fraudulent breach of the employment”.
SOVEREIGN IMMUNITY
Defendants’ argument that the State is immune from liability goes directly to this court’s jurisdiction to hear a significant portion of the claim, and, therefore, it will be addressed first.
The waiver of the State’s sovereign immunity by enactment of the Court of Claims Act was not total; a significant portion remains. In brief overview, sovereign immunity is still accorded to discretionary governmental acts but not to acts which are exclusively ministerial. (Tango v Tulevech, 61 NY2d 34.) A discretionary act involves "the exercise of reasoned judgment which could typically produce different acceptable *373 results whereas a ministerial act envisions direct adherence to a governing rule or standard with a compulsory result.” (Supra, at 41.)
If the discretionary act is quasi-judicial in nature, absolute immunity obtains. (Tarter v State of New York, 68 NY2d 511.) If not, there is a qualified immunity shielding the government from liability except "when there is bad faith or the action taken is without a reasonable basis.” (Arteaga v State of New York, 72 NY2d 212, 216.) A governmental act must "sufficiently [evince] the attributes of judicial decision making to merit full immunity.” (Supra, at 217.) Applying these legal principles to the factual analysis set out below, we find that DOCS’ policy decision to controvert all stress-related disability claims is entitled to the qualified immunity accorded to nonjudicial discretionary actions.
Counsel for claimant argues, as he must in the absence of any proof of bad faith, that DOCS officials did not exercise any discretion in making their policy decision, and thus, they lost the benefit of any immunity when they decided — without knowing the circumstances of the individual claims that would be made — that all such applications should be controverted. We agree with counsel that the Court of Appeals decision in Haddock v City of New York (75 NY2d 478) stands for the proposition that when reasoned judgment is called for but no consideration of any sort is given to a problem, liability may ensue. In that case, the City of New York was held liable for injuries suffered by a young girl who was raped by a City park employee when City officials had failed to even consider the issue of the employee’s fitness to continue in his job once information about his history of violent offenses became known.
In the instant case, in contrast, claimant himself provides evidence that the officials responsible for making the complained-of decision arrived at that course of action after an exercise of discretion in which they weighed relevant considerations and thought about the outcome if other positions were taken. Correction officers are sui generis (see, Arteaga v State of New York, 72 NY2d 212, supra). They are, by the very nature of their occupation, constantly exposed to the particular risks of stress-related injury arising from "the 'formidable tasks’ of maintaining order and security in correctional facilities and protecting the safety of inmates and employees” (supra, at 217).
*374 The public policy evidenced by DOCS in determining to contravene all stress-related disability claims (except in hostage situations) is the result of a conscious exercise of discretion to fine-tune the balance between DOCS’ specialized and unique governmental function and its employment relationship with correction officers who are inevitably subjected to stress. There is, at the very least, a reasonable basis for the decision to make each correction officer who presents a stress-related disability claim actually prove that claim before the Workers’ Compensation Board.
It should be emphasized that this policy decision to controvert such claims does not mean that any officer suffering stress-related disability will be denied workers’ compensation benefits. Claimant uses the word "controvert” as if it were synonymous with "denial” when, in fact, defendant is merely requiring the applicant to prove his disability. DOCS does not have the power to grant or deny a workers’ compensation claim: only the Workers’ Compensation Board has such power. Claimant’s own case illustrates the limited power DOCS has to affect the ultimate outcome. After DOCS controverted claimant’s 1985 application, the WCB conducted a hearing and found for the claimant, awarding him disability benefits for the 1985 injury.
We hold, therefore, that defendants may not be held liable in a suit for money damages for any harm resulting from this policy decision, even though nongovernmental employers in similar circumstances (or governmental employers in different circumstances) "might have to respond in damages”. (Haddock v City of New York, 75 NY2d, at 485, supra.) In holding that the State’s action in adopting this policy regarding stress-related claims made by correction officers is immune from liability, we necessarily dismiss any part of the amended claim that rests on allegations that the decision resulted in harm to claimant.
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
In addition to his objections to the State’s decision to controvert the claim, claimant alleges that the actions of DOCS officials in phoning and threatening him and his family give rise to compensable injury. In a strikingly similar case, the Court of Appeals has held that an employee may institute a suit against an employer or carrier who acts in bad faith to delay the employee’s receipt of workers’ compensation benefits.
*375 The plaintiff in Burlew v American Mut. Ins. Co. (63 NY2d 412) alleged that her employer harmed her in this fashion by refusing, for several months, to approve her application for needed medical treatment and by engaging in harassing behavior. This behavior consisted of agents of the employer telling plaintiff that she was crazy if she thought the employer was going to support her for the rest of her life and obtaining testimony from someone on the employer’s staff to the effect that plaintiff’s illness was due to a preexisting injury.
In applying the relevant standard by which such allegations should be judged, the Court stated: "[Plaintiff’s] complaint, even when supplemented by her affidavit, does not describe any conduct remotely approaching the standard of behavior necessary to establish such a claim. Neither the agent’s statement that plaintiff could not expect to be supported by the insurer forever nor the carrier’s attempt to disprove plaintiff’s claim [before the WCB] was so extreme and outrageous as to exceed all bounds of decency or to be utterly intolerable in civilized society.” (Burlew v American Mut. Ins. Co., supra, 63 NY2d, at 417, citing to Fischer v Maloney, 43 NY2d 553; see also, Restatement [Second] of Torts § 46 [1], comment d.)
In the instant case, the amended claim alleges that State employees "telephoned our house and harassed and aggravated myself and invaded my privacy”. In an affidavit submitted in opposition to this motion, claimant provides the following details:[4] "13. While out of work, I was threatened by the facility staff that I would be fired if I did not return to work, even though they knew that I had a legitimate job related disability that prevented me from working * * * I was told that I would not be allowed to receive my Workers’ Compensation benefits. I was told that if I continued to stay out of work, I would be taken off the payroll and lose all of my medical benefits. Calls were made to my home, demanding that I return to work, and if I was not home at the time the calls were made, my wife would be harassed with these calls, and would be questioned as to my whereabouts.” These allegations are, at best, no more serious than those presented in Burlew - (supra). They simply do not describe actions that cannot be tolerated in civilized society.
*376 To go further, documents provided by claimant himself reveal that, following his 1985 injury, he used up the time allowed for his physical injury to heal and then all available sick leave. By November 11, 1985, he was "out of all time accruals”, and requested leave with half-pay. Unless he either returned to work or was granted his requested leave on half-pay, claimant would be violating the terms of his employment and would lose his position. Consequently, actions taken to inform claimant that he might be in danger of losing his job and, as a result, his medical benefits, were not necessarily made to harass but may have been legitimate warnings about a possible, even probable, outcome of his continued absence.
PRIMA FACIE TORT/BAD FAITH BREACH OF THE EMPLOYMENT RELATIONSHIP
Counsel for claimant has directed the court’s attention to several cases that, in situations similar to the one presented here, recognize a common-law tort based on an employer’s (or insurance carrier’s)[5] harmful actions "outside the scope of the Workers’ Compensation Law”. (Coley v Ogden Mem. Hosp., 107 AD2d 67, 69.) In an earlier case, somewhat similar to the action now before us, the Third Department described this cause of action as one for "intentional tort and/or fraudulent breach of an insurer’s duty of good faith and fair dealing”. (DeMarco v Federal Ins. Co., 99 AD2d 114, 117.)
In DeMarco (supra), an employee injured her lower back in the course of her employment and sought workers’ compensation benefits from her employer’s carrier. Benefits were eventually awarded to her, but she nevertheless sued the carrier for aggravation of her back condition, loss of credit standing and other distress allegedly caused by the carrier’s prolonged delay before benefits were granted. The Court summarized the factual allegations, viewed in the manner most favorable to the plaintiff, as follows: "Plaintiffs’ allegations describe a history of several years during which both plaintiffs’ and defendant’s examining physicians and psychiatrist unequivocally found a bona fide serious disc injury and that plaintiff’s complaints were neither feigned nor psychosomatic. Despite such reports, defendant repeatedly refused to authorize the *377 surgery that both sets of experts unanimously recommended. Additionally, defendant’s adjustor refused to authorize payments for one of plaintiff’s resultant hospitalizations, stating only that 'she was not interested in details’. Upon psychiatric examination, plaintiff displayed genuine depression and distress because of the disabilities claimed to have been prolonged by defendant’s conduct. Ultimately, she was required to find other resources to obtain the necessary surgery. This partly alleviated her condition, but she was told by her physician that her permanent disability was more severe because of the delay.” (DeMarco v Federal Ins. Co., 99 AD2d, at 115.)
The complaint in DeMarco (supra) had been dismissed by the trial court for failure to state a cause of action. The Appellate Division reversed, holding that a common-law tort could be brought in those circumstances and that, if those allegations were proven at trial, they "could be the basis of inferences supporting recovery for intentional tort or for fraudulent breach of an insurer’s duty of good faith and fair dealing.” (Supra, at 116.) More recently, in Salka v Lumbermens Mut. Cas. Co. (127 AD2d 333, 337), the Third Department described DeMarco, along with other decisions, as standing for the proposition that such conduct must be "morally reprehensible”.
We accept that allegations which are not sufficient to state a cause of action for intentional infliction of emotional distress may nevertheless state a cause of action for prima facie tort or breach of the duty of good faith and fair dealing. While the standard is lower, we hold that the allegations made by the claimant in this case are not sufficiently grave and, thus, cannot support a viable cause of action. In DeMarco (supra), the allegedly wrongful acts were committed over a span of several years and occurred in the face of unanimous medical and psychiatric opinion that the disability was genuine and required prompt surgery. In addition, the wrongful delay was alleged to be the direct cause of specific and verifiable injuries to the plaintiff: loss of credit in paying for hospitalizations that should have been covered and a verifiable worsening of her physical condition even after surgery. The facts and allegations giving rise to the instant action, in contrast, are far more innocuous. The telephone contacts made to claimant *378 were not clearly harassing or "morally reprehensible” in their content and may even have been positive in their motivation.[6]
 In summary, therefore, we hold that claimant has not alleged and would not be able to prove any viable cause of action. Defendants’ policy of controverting stress-related claims made by correction officers, other than those who have been taken hostage, was a discretionary decision made after consideration of the issue, and, as such, it is protected by qualified sovereign immunity. In addition, the alleged actions of defendants’ employees in making phone calls which claimant found to be harassing are not serious enough to support a claim based on intentional infliction of emotional distress, prima facie tort or bad faith breach of the duty of good faith and fair dealing.
For the reasons set forth above, defendants’ motion is granted and the amended claims are dismissed.

. Claim No. 72181 is derivative in nature and contains only two causes of action.

. The first and fourth causes of action are deemed abandoned and would have been dismissed in any event. The first cause of action, to the extent that it can be read as stating any cause of action, duplicates the third, and this court does not have jurisdiction to hear the fourth cause of action which is a civil rights action brought pursuant to 42 USC § 1983.

. The deposition testimony of Sergeant Richard Gordon, who apparently handled requests for disability and leave time, suggests another reason claimant’s application might have been controverted: because the 1985 stress-related claim was based in part on the 1982 injury, claimant had already received the maximum 180 days’ benefit with respect to that earlier injury. In order to view this matter in the light most favorable to claimant, however, we will consider this issue as if the only reason for contravention was defendants’ blanket policy regarding such claims.

. "Affidavits, depositions, documentary proof, admissions, letters, and any other papers or proof having an evidentiary impact in the particular situation may be considered on any CPLR 3211 motion regardless of its ground.” (Siegel, NY Prac § 257, at 387 [2d ed].)

. In the instant case, the State Insurance Fund was the insurer. Both counsel take the position, explicitly and implicitly, that DOCS was in control of the decision of whether a claim would or would not be controverted and, consequently, we consider the State to be its own insurer.

. In Coley v Ogden Mem. Hosp. (107 AD2d 67, 70, supra), the Third Department held that if there was a nonmalicious motive for the employer’s actions, there can be no recovery "under the theory of prima facie tort”. This might well bar claimant’s recovery even if the allegations of harm were much more serious.