164 F.3d 820
 Michael J. STUTO, Plaintiff-Appellant,
v.
Seymour FLEISHMAN, Thomas Pavloski, Kenneth Hamlett, New
York City Office of the United States Department of Labor's
Office of Workers' Compensation Programs, U.S. Department of
Labor, and United States of America, Defendants-Appellees.
 No. 97-6305.
 United States Court of Appeals,
Second Circuit.
 Argued May 13, 1998.
Decided Jan. 21, 1999.
 
 Phillip G. Steck, Cooper, Erving, Savage, Nolan & Heller, LLP, Albany, NY, for Plaintiff-Appellant.
 Rebecca DeRuyter, U.S. Department of Labor, Office of the Solicitor, Washington, DC (Thomas J. Maroney, United States Attorney, Thomas Spina, Assistant U.S. Attorney, Northern District of New York, Albany, NY, of counsel ), for Defendants-Appellees.
 Before: FEINBERG and WALKER, Circuit Judges, and SHADUR,* Senior District Judge.
 WALKER, Circuit Judge:
 
 
 1
 Plaintiff-appellant Michael J. Stuto appeals from the judgment entered December 2, 1997, by the United States District Court for the Northern District of New York (Lawrence E. Kahn, Judge ), dismissing his complaint pursuant to Fed.R.Civ.P. 12(b)(6). This judgment followed upon two orders of the district court: the first, issued by Judge Con C. Cholakis, dismissed most of Stuto's claims; Judge Lawrence E. Kahn later dismissed the balance of the complaint. Stuto's complaint alleged a Bivens-type damages claim against defendants-appellees Seymour Fleishman, Thomas Pavloski, and Kenneth Hamlett for violation of his right to due process under the Fifth Amendment, as well as claims against the United States, the United States Department of Labor, and the New York City branch of the Office of Workers' Compensation Programs ("OWCP") (collectively the "government" or "government defendants") under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671 et seq., for misrepresentation, fraud, and negligent and intentional infliction of emotional distress arising out of the improper termination of Stuto's disability benefits under the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. § 8101 et seq. Stuto appeals only from Judge Cholakis's dismissal of his due process claim and Judge Kahn's dismissal of his FTCA claim for intentional infliction of emotional distress. Because we hold that Stuto's due process rights were not violated and that he has failed to state a claim for intentional infliction of emotional distress, we affirm.
 
 BACKGROUND
 
 2
 Stuto's complaint alleges the following facts. In September 1985, Stuto, a mailhandler employed by the United States Postal Service in Albany, New York, suffered a disabling work-related injury to his lower back that required surgery. Two months later he began receiving workers' compensation benefits pursuant to FECA. Four years later, in September 1989, Stuto was given medical clearance for limited job duty of three hours a day. Soon after starting a job repairing damaged mail, his back injury worsened and his physician, Dr. Guidarelli, declared him totally disabled. In November 1989, a Dr. Fay performed a "fitness for duty exam" for the Postal Service and determined that Stuto "would benefit from a ... Work Assessment Conditioning Center." Stuto attended the program, but his condition did not improve. Stuto continued to receive disability payments.
 
 
 3
 On March 18 and June 26, 1991, at the request of the Department of Labor, Stuto was examined by Drs. Fay and Kavanaugh. Both concluded that Stuto was capable of limited sedentary work. Over the next year Stuto accepted new job offers from the Postal Service, but, for reasons not stated in the complaint, he never actually entered into any of these jobs.
 
 
 4
 On May 29, 1992, Fleishman of OWCP sent a letter to Stuto advising him that OWCP had determined that a new job offer from the Postal Service was suitable for Stuto in light of the medical evidence concerning Stuto's ability to work. He gave Stuto "30 days from the receipt of this letter to either accept the job or to provide a reasonable, acceptable explanation for refusing the offer." On July 2, Stuto sent a letter to OWCP stating that he accepted the job offer but also that he had been advised by his physicians, Drs. Guidarelli and Patel, that he was totally disabled. He requested that OWCP send him to a medical referee to resolve any conflict. He also objected to several of the medical reports in his file as not having been obtained in accordance with FECA regulations.
 
 
 5
 Meanwhile, on July 1 Stuto had submitted to a "fitness for duty" exam by a Dr. Rogers, as required by the Postal Service. Dr. Rogers sent a medical report to the Postal Service on July 2, stating that in his opinion Stuto was totally disabled and incapable of working. That report allegedly was forwarded to OWCP by the Postal Service on July 7, accompanied by a memorandum from the Postal Service stating that it needed clarification regarding Stuto's current medical condition before he could report for work. Because Stuto's medical condition remained unclear, the Postal Service did not request that he report for work, and Stuto never did so.
 
 
 6
 Stuto did not receive his scheduled worker's compensation payment for July. In a telephone call on July 29, Fleishman informed Stuto's brother, Peter Stuto, that Stuto's disability benefits were "terminated because he is not working." According to Stuto's complaint, Fleishman denied that Dr. Rogers's "fitness for duty" report had been received by OWCP.
 
 
 7
 OWCP then sent Stuto an order dated August 5, declaring that his benefits had been terminated because "[i]n a statement ... dated July 2, 1992, [Stuto] accepted the job offer but then refused it based on the advice of his physician." Attached to the order was a letter explaining, inter alia, that the "decision [to terminate his benefits] was based on all evidence of record and on the assumption that all available evidence was submitted. If you disagree with the decision, you may follow any one of the courses of action outlined on the attached appeal rights." The "appeal rights" referred to an enclosed memorandum entitled "Federal Employees' Compensation Act Appeal Rights."
 
 
 8
 According to Stuto, the individual defendants at OWCP continued to deny that they had received Dr. Rogers's report, even though Stuto's OWCP file indicates that the OWCP received the report on July 7, that its substance was communicated to the defendants several times, and that a second copy of the report was sent to OWCP on August 5. Moreover, the individual defendants refused to reconsider their decision to terminate Stuto's benefits in light of the report. In response to Stuto's complaint that he would be in a difficult financial condition if his benefits did not resume, Pavloski allegedly suggested that Stuto request another "fitness for duty exam" and tell the doctor that he could do the job. Pavloski told Stuto that he could appeal the termination, but that "his case was very weak, and if the appeal were lost, the Post Office would never offer him another job." Stuto also alleges that the individual defendants conspired to put Dr. Rogers's report into Stuto's file after the date of the termination "in an effort to sabotage Mr. Stuto's right to appeal to the Employees' Compensation Appeals Board ['ECAB']."
 
 
 9
 On August 10, 1992, Stuto filed an appeal with the ECAB for review of the decision to terminate his benefits. On November 4, 1992, the Director of the OWCP filed a motion to set aside the decision to terminate and to remand the case. He contended that OWCP had not followed proper procedures in two ways: (1) it failed to notify Stuto that the medical examination by Dr. Kavanaugh was for the purpose of resolving a conflict in the medical evidence, and therefore Dr. Kavanaugh's report could not be used to resolve the conflict, and (2) it failed to give Stuto appropriate notice prior to terminating his benefits, as required by FECA Bulletin No. 92-19. The Director stated that "[o]n remand, the Office will reinstate appellant's monetary benefits, retroactive to July 11, 1992, ... will ensure that Dr. Kavanaugh's June 26, 1991 report is excluded from further review in appellant's claim[,] and will follow proper procedures to resolve the conflict of medical evidence." On January 11, 1993, the ECAB granted the Director's motion to remand. See In the Matter of Michael Stuto, No. 92-1978 (ECAB January 11, 1993).
 
 
 10
 In November of 1992, prior to the ECAB's decision to remand, Stuto filed an action in the United States District Court for the Northern District of New York alleging that the Secretary of Labor violated his rights under the Due Process Clause and FECA by improperly terminating his disability benefits. Stuto moved for a preliminary injunction reinstating his disability benefits. In response, the government agreed to reinstate his benefits retroactively, and the motion for a preliminary injunction was withdrawn. Following the ECAB's remand of the case, an impartial medical examination determined that Stuto was totally disabled; his benefits have continued to the present day.
 
 
 11
 On July 7, 1994, Stuto filed this action in the United States District Court for the Northern District of New York. He alleged a Bivens-type claim against the individual defendants Fleishman, Pavloski and Hamlett, for violation of his Fifth Amendment right to due process, see Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388, 390, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (recognizing implied cause of action for violation of plaintiff's Fourth Amendment rights), and a claim against the government defendants under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671 et seq., for misrepresentation, fraudulent denial of benefits, and negligent and intentional infliction of emotional distress. The government moved to dismiss the action pursuant to Fed.R.Civ.P. 12(b)(6). Judge Cholakis dismissed all of Stuto's claims except for the claims for negligent and intentional infliction of emotional distress. The case was subsequently transferred to Judge Kahn, who dismissed the remaining claims upon the government's motion for reconsideration. This appeal followed.
 
 DISCUSSION
 
 12
 Judge Cholakis held, inter alia, that (1) in accordance with Schweiker v. Chilicky, 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988), the comprehensive remedial scheme enacted by Congress under FECA displaced a Bivens remedy for constitutional violations; (2) even if a Bivens action would lie, the individual defendants were entitled to qualified immunity because they had not violated a clearly established constitutional right; and (3) all of Stuto's claims under the FTCA except for negligent and intentional infliction of emotional distress were barred by either the "discretionary functions" or the "intentional torts" exceptions to the FTCA, 28 U.S.C. § 2680(a), (h). See Stuto v. Fleishman, 94-CV-846, slip op. at 3-11 (N.D.N.Y. Jan. 8, 1996). Later, Judge Kahn held that Stuto's claims for negligent and intentional infliction of emotional distress were also barred by the "discretionary functions" exception to the FTCA, 28 U.S.C. § 2680(a), and that the allegedly tortious conduct was not sufficiently outrageous to satisfy the strict standards for intentional infliction of emotional distress under New York law. See Stuto v. Fleishman, 94-CV-0846 (LEK/DNH), slip op. at 17 (N.D.N.Y. Nov. 4, 1997). On appeal, Stuto argues that (1) his Bivens claim is not displaced by FECA; (2) the individual defendants are not entitled to qualified immunity; and (3) his claim for intentional infliction of emotional distress is not barred by the "discretionary functions" exception to the FTCA and alleges sufficiently outrageous conduct to satisfy the elements of the tort under New York law. For the following reasons, we affirm the dismissal of Stuto's claims.
 
 I. Standard of Review
 
 13
 We review the dismissal of a complaint under Rule 12(b)(6) de novo, taking as true the material facts alleged in the complaint and drawing all reasonable inferences in favor of the plaintiff. See Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir.1998); Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir.1996). A dismissal under Rule 12(b)(6) for failure to state a cognizable claim may be affirmed only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Citibank, N.A. v. K-H Corp., 968 F.2d 1489, 1494 (2d Cir.1992); see also Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).
 
 II. Bivens Claim
 
 14
 We need not decide whether Congress intended FECA to displace a Bivens remedy for constitutional harms because we find that, in any event, Stuto's Bivens claim would fail because he has failed to state a claim for denial of due process.
 
 
 15
 The district court found that the individual defendants were shielded by qualified immunity because their discretionary actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. See Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). However, in the recent decision of County of Sacramento v. Lewis, the Supreme Court stated that
 
 
 16
 the better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all. Normally, it is only then that a court should ask whether the right allegedly implicated was clearly established at the time of the events in question.
 
 
 17
 523 U.S. 833, 118 S.Ct. 1708, 1714 n. 5, 140 L.Ed.2d 1043 (1998). While we have held that this preference is non-mandatory, Medeiros v. O'Connell, 150 F.3d 164, 169 (2d Cir.1998), we acceded to it in Medeiros and affirmed on the merits of the constitutional claim in light of Lewis, although the district court's decision was based on qualified immunity. Therefore, we will examine whether Stuto has alleged a violation of due process.
 
 
 18
 There can be little doubt that Stuto's disability benefits under FECA constitute a valid property interest. See Raditch v. United States, 929 F.2d 478, 480 (9th Cir.1991) (recognizing property interest in FECA benefits); see also Mathews v. Eldridge, 424 U.S. 319, 332, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (recognizing property interest in Social Security disability benefits); Goldberg v. Kelly, 397 U.S. 254, 262, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (recognizing property interest in welfare benefits). Stuto argues that the individual defendants intentionally, or at least negligently, deprived him of this property interest by improperly terminating his benefits. However, the negligent or intentional deprivation of property through the random and unauthorized acts of a state or federal employee does not constitute a deprivation of due process if "a meaningful postdeprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (intentional deprivation); see also Parratt v. Taylor, 451 U.S. 527, 543, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) (negligent deprivation); Raditch, 929 F.2d at 480-81 (applying the holdings of Parratt and Hudson to the termination of FECA benefits). In her concurring opinion in Hudson, Justice O'Connor explained that
 
 
 19
 Of course, a mere allegation of property deprivation does not by itself state a constitutional claim under [the Due Process] Clause. The Constitution requires the Government, if it deprives people of their property, to provide due process of law and to make just compensation for any takings. The due process requirement means that Government must provide to the [plaintiff] the remedies it promised would be available.
 
 
 20
 Hudson, 468 U.S. at 539, 104 S.Ct. 3194 (O'Connor, J., concurring). Here, Stuto had available to him a menu of possible post-deprivation remedies for the termination of his benefits. In fact, his appeal to the ECAB resulted in the retroactive restoration of his benefits due to the procedural irregularities that had led to termination. That Stuto "might not be able to recover under these remedies the full amount which he might receive in a [Bivens-type] action is not ... determinative of the adequacy of the [administrative] remedies." Hudson, 468 U.S. at 535, 104 S.Ct. 3194. Accordingly, we find that Stuto has not alleged a violation of due process.
 
 
 21
 Stuto relies on two district court cases to support his claim that the actions taken by the individual defendants in suppressing evidence rendered ineffectual whatever procedural protections Congress intended to afford under FECA, thereby stating a claim for a violation of due process. In Rauccio v. Frank, 750 F.Supp. 566 (D.Conn.1990), the district court allowed a due process claim because the defendants (plaintiff's superiors) had repeatedly acted in a manner that foreclosed his ability to pursue remedies for his demotion and termination under the Civil Service Reform Act of 1978, Pub.L. No. 95-454, 92 Stat. 1111 (1978). See id. at 570-71. Similarly, in Grichenko v. United States Postal Serv., 524 F.Supp. 672 (E.D.N.Y.1981), plaintiff was allowed to bring a due process claim against several postal employees based on their "intentional failure timely to process his claim for compensation in FECA," which resulted in FECA's denial of benefits based on the untimeliness of the claim. Id. at 673. Both Rauccio and Grichenko involved conduct that foreclosed the administrative remedies of FECA, and therefore FECA's protections were unavailable.
 
 
 22
 Stuto argues that the individual defendants purposefully suppressed Dr. Rogers's report and intentionally deprived him of access to FECA's post-deprivation remedies by placing the report in Stuto's file after the order to terminate had been issued so that it was not part of the record reviewed by the ECAB. Thus, Stuto contends, he was "forced to go outside the established administrative process to redress his grievances." We reject this argument.
 
 
 23
 Stuto appears to be correct that on appeal, the ECAB could consider only the evidence contained in the record at the time the termination order was issued. However, as explained in "Federal Employees' Compensation Act Appeal Rights,"[1] an appeal to the ECAB was only one of several avenues of recourse open to Stuto. He could have sought an oral hearing before an OWCP representative within 30 days after the termination decision, where he would have had "the opportunity to present oral testimony and written evidence in further support of [his] claim." Similarly, Stuto could have sought reconsideration. The memorandum informed Stuto that
 
 
 24
 [i]f you have additional evidence which you believe is pertinent, you may request, in writing, that OWCP reconsider this decision. Such a request must be made within one year of the date of the decision, clearly state the grounds upon which reconsideration is being requested, and be accompanied by relevant evidence not previously submitted, such as medical reports or affidavits, or a legal argument not previously made. ... In order to ensure that you receive an independent evaluation of the evidence, your case will be reconsidered by persons other than those who made this determination.
 
 
 25
 (emphasis added). Under either of these two procedures, Stuto would have been allowed to submit new evidence such as Dr. Rogers's report. The fact that Stuto opted for a direct appeal, the one avenue that prevented him from submitting Dr. Rogers's report, does not lead us to conclude that he was denied due process when other avenues that would have satisfied his objectives were open to him.
 
 
 26
 Finally, to the extent Stuto's complaint alleges a facial challenge to the absence of pre-termination notice procedure, his premise is in error. As noted in the Director of OWCP's motion to remand and in the ECAB decision granting remand, FECA Bulletin 92-19, effective July 31, 1992, already required such pre-termination notice at the time Stuto's benefits were terminated. These are now apparently permanent requirements. See Stuto v. Reich, No. 92-CV-1374, slip op. at 2 & n. 1 (N.D.N.Y. Nov. 18, 1994). As discussed above, the fact that Stuto did not receive the notice due to the individual defendants' failure to follow these procedures was constitutionally remedied by the availability of adequate post-deprivation review.
 
 III. FTCA Claim
 
 27
 With respect to the FTCA claims, Stuto challenges only the dismissal of the claim for intentional infliction for emotional distress. Judge Kahn dismissed this claim on the grounds that (1) it was barred by the "discretionary functions" exception to the FTCA, 28 U.S.C. § 2680(a), and (2) the alleged conduct was not sufficiently outrageous to satisfy the requirements for intentional infliction of emotional distress under New York law. We need not decide whether Stuto's claim would be barred by any of the exceptions to the FTCA because we agree with the district court that, in any event, the conduct at issue does not meet the stringent requirements for this tort under New York law.
 
 
 28
 Under the FTCA, the government may be held liable for tortious conduct of federal agencies or employees only if a private actor would have been found liable under the state law where the tortious conduct occurred. See 28 U.S.C. § 1346(b) (FTCA only comprises causes of action that are "in accordance with the law of the place where the act or omission occurred"). Accordingly, we look to New York state tort law to determine whether Stuto has stated a claim.
 
 
 29
 Under New York law, a claim for intentional infliction of emotional distress requires a showing of (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress. See Howell v. New York Post Co., 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 612 N.E.2d 699 (1993). " 'Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.' " Id. at 122, 596 N.Y.S.2d 350, 612 N.E.2d 699 (quoting Murphy v. American Home Prods. Corp., 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983)); Restatement (Second) of Torts, § 46 cmt. d (1965). Thus,
 
 
 30
 [i]t has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.
 
 
 31
 Restatement (Second) of Torts § 46 cmt. d (1965). Whether the conduct alleged may reasonably be regarded as so extreme and outrageous as to permit recovery is a matter for the court to determine in the first instance. See id. at § 46 cmt. h; see also Howell, 81 N.Y.2d at 121, 596 N.Y.S.2d 350, 612 N.E.2d 699.
 
 
 32
 As the district court noted, several New York courts have dismissed cases involving acts of coercion and misrepresentation related to employment or disability decisions on the ground that such conduct was not extreme and outrageous. For example, in Murphy, 58 N.Y.2d at 293, 461 N.Y.S.2d 232, 448 N.E.2d 86, the plaintiff alleged that he was transferred and demoted for reporting fraud, coerced to leave by being told that he would never be allowed to advance, discharged and ordered to leave immediately after reporting other alleged in-house illegal conduct, and then forcibly and publicly escorted from the building by guards when he returned the next day to pick up his belongings. The Court of Appeals held that this conduct fell "far short" of the tort's "strict standard" for outrageous behavior. Id. at 303, 461 N.Y.S.2d 232, 448 N.E.2d 86; see also Burlew v. American Mut. Ins. Co., 63 N.Y.2d 412, 415, 417-18, 482 N.Y.S.2d 720, 472 N.E.2d 682 (1984) (defendant's intentional five-month delay in authorizing needed surgery in connection with plaintiff's worker's compensation claim, statement to plaintiff that " 'You're crazy if you think we're going to support you for the rest of your life,' " and procurement of an affidavit from an employee stating that plaintiff's condition resulted from a pre-existing injury not sufficiently extreme or outrageous to state a claim); Howell, 81 N.Y.2d at 118-19, 126, 596 N.Y.S.2d 350, 612 N.E.2d 699 (newspaper's publication of photograph of plaintiff and Hedda Nussbaum taken at psychiatric hospital, obtained by photographer's trespass onto hospital grounds, and published despite hospital's entreaties to remove plaintiff from picture because only her immediate family knew she was there, not sufficiently outrageous); Foley v. Mobil Chem. Co., 214 A.D.2d 1003, 626 N.Y.S.2d 906, 908 (4th Dep't 1995); Ruggiero v. Contemporary Shells, Inc., 160 A.D.2d 986, 554 N.Y.S.2d 708, 708-09 (2d Dep't 1990); Luciano v. Handcock, 78 A.D.2d 943, 433 N.Y.S.2d 257, 258 (3d Dep't 1980).
 
 
 33
 Huzar v. New York, 156 Misc.2d 370, 590 N.Y.S.2d 1000 (N.Y.Ct.Cl.1992), is similar on its facts to the case at hand. There, a correction officer's disability claim was controverted by the Department of Correctional Services as a matter of routine policy, although the Workers' Compensation Board later determined that the plaintiff was disabled. The court found that the plaintiff had failed to state a claim for intentional infliction of emotional distress, notwithstanding his allegations that he was
 
 
 34
 threatened by the facility staff that I would be fired if I did not return to work, even though they knew that I had a legitimate job related disability that prevented me from working.... I was told that I would not be allowed to receive my Workers' Compensation benefits. I was told that if I continued to stay out of work, I would be taken off the payroll and lose all of my medical benefits. Calls were made to my home, demanding that I return to work, and if I was not home at the time the calls were made, my wife would be harassed with these calls, and would be questioned as to my whereabouts.
 
 
 35
 Id. at 1004.
 
 
 36
 As in Huzar, Stuto has failed to allege any conduct that is sufficiently "extreme and outrageous" to meet the stringent New York standard as enunciated in the foregoing cases. The crux of his complaint is that OWCP officials "intentionally, recklessly, and/or negligently ignored" dispositive medical evidence, "lied to Mr. Stuto, requested that he lie during his medical examinations, and used his financial need for disability benefits as a weapon to coerce him into acceding to their invalid demands that he return to work." We agree with the district court's observation that coercion is inherent in any decision by OWCP to require a recipient of disability benefits to go to work on the basis that the medical evidence indicates that he is capable of such work. As Stuto acknowledged in his complaint, the individual defendants had before them two medical reports stating that Stuto was capable of limited sedentary work, and OWCP had determined that the job offer at the Postal Service was suitable. Moreover, their disregard of Dr. Rogers's report, while certainly improper, was not sufficiently outrageous given the fact that Stuto could have introduced this report at an oral hearing or upon reconsideration, had he requested either.
 
 
 37
 Stuto points to several cases in which courts have sustained claims for intentional infliction of emotional distress. However, these cases all involved some combination of public humiliation, false accusations of criminal or heinous conduct, verbal abuse or harassment, physical threats, permanent loss of employment, or conduct contrary to public policy. See, e.g., Macey v. NYSEG, 80 A.D.2d 669, 436 N.Y.S.2d 389, 391-92 (3d Dep't 1981) (defendant electric company refused to restore plaintiff's electricity unless she legally separated from her husband); Sullivan v. Board of Educ., 131 A.D.2d 836, 517 N.Y.S.2d 197, 199, 200 (2d Dep't 1987) (defamation and threat of bringing falsified charges used to coerce resignation of tenured professor); Kaminski v. UPS, 120 A.D.2d 409, 501 N.Y.S.2d 871, 872, 873 (1st Dep't 1986) (false accusation of theft, false imprisonment, verbal abuse, and threat of prosecution resulted in coerced confession and resignation); Halperin v. Salvan, 117 A.D.2d 544, 499 N.Y.S.2d 55, 57-58 (1st Dep't 1986) (malicious prosecution; false accusations of criminal conduct); Bialik v. E.I. DuPont De Nemours & Co., 142 Misc.2d 926, 539 N.Y.S.2d 605, 606 (N.Y.Sup.1988) (plaintiff's complaint about unsafe working conditions resulted in improper disciplinary action against him, false accusation that he was responsible for accident that resulted in death of one woman, termination, discrimination after reinstatement, and second termination); Flamm v. Van Nierop, 56 Misc.2d 1059, 291 N.Y.S.2d 189, 190-91 (N.Y.Sup.1968) (recurring physical threats and harassing phone calls).
 
 
 38
 The conduct in these cases is readily distinguishable from that alleged by Stuto. The individual defendants here neither verbally abused, physically threatened, nor publicly humiliated Stuto; they neither falsely accused him of criminal or heinous misconduct, threatened him with prosecution, nor permanently deprived him of his benefits or employment. Accordingly, we affirm the district court's dismissal of Stuto's claim under the FTCA for intentional infliction of emotional distress.
 
 CONCLUSION
 
 39
 We hold that (1) Stuto failed to state a claim for denial of due process because adequate post-deprivation remedies existed to restore his benefits; and (2) Stuto failed to allege sufficiently "extreme or outrageous" conduct to state a claim under the FTCA for intentional infliction of emotional distress. The judgment of the district court dismissing Stuto's claims is affirmed.
 
 
 
 *
 The Honorable Milton I. Shadur, of the United States District Court for the Northern District of Illinois, sitting by designation
 
 
 [1]
 Although this case was decided on the government's motion to dismiss under Fed.R.Civ.P. 12, our consideration of this document is permissible because it was part of the termination order sent to Stuto and discussed in his complaint, and therefore was incorporated by reference. See Newman & Schwartz v. Asplundh Tree Expert Co., 102 F.3d 660, 662 (2d Cir.1996) (" 'In considering a motion to dismiss for failure to state a claim ... a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference.' " (quoting Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir.1991))); see also Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir.1991) (court can consider documents of which the plaintiffs had notice and which were integral to their claim in ruling on motion to dismiss even though those documents were not incorporated into the complaint by reference)