Charles R. MANCABELLI, Plaintiff,

v.

The SOLVAY UNION FREE SCHOOL DISTRICT, The Solvay Union Free School Board of Education, Thomas Helmer, Individually, and as the Superintendent of the Solvay Union Free School District, and Steven Zalewski, Individually, and as a Member of the Board of Education, Defendants.

No. 5:98–CV–1973(HGM/GJD).

United States District Court, N.D. New York.

Nov. 28, 2001.

Norman P. Deep, Clinton, NY, for plaintiff.

Harris Beach, LLP, Rochester, NY (Edward P. Hourihan, Jr., of counsel), for defendants.

## MEMORANDUM—DECISION AND ORDER

MUNSON, Senior District Judge.

### FACTS[1]

Plaintiff, Charles R. Mancabelli, is a physical education teacher and former head varsity track coach. He claims that defendants—the Solvay Union Free School District ("District"), the Solvay Union Free School Board of Education ("Board"), Superintendent Thomas Helmer, and Board member Steven Zalewski—discriminated against him on the basis of age in appointing another individual as the head varsity track coach for the District.

---

1. Plaintiff failed to file an appropriate response to Defendants' Statement of Material Facts Not in Dispute. Therefore, these facts are deemed admitted pursuant to Local Rule 7.1(a)(3).

Each year, the Board appoints individuals to serve as coaches for the District's modified and varsity athletic teams upon the recommendation of the superintendent and principal and in compliance with the contract between the Solvay Teachers' Association and the District. Coaches are appointed season-by-season, and the Board is not required to appoint a coach year-after-year. Near the end of each school year, all coaching positions are posted and listed as available for the following school year. All coaches in the District must apply for appointment or re-appointment each year. The athletic director assembles a list of potential coaches, the list is reviewed with the principal, and recommendations are sent to the superintendent. Once the superintendent receives the recommendations, he presents them to the Board. If approved by a majority vote of the Board, a particular coach is appointed for a season.

Plaintiff served as the head varsity boys' track coach beginning in the 1986–87 school year. He was annually re-appointed as the head coach each year until the 1997–98 school year, with the exception of a couple of years while plaintiff was on military leave.

In February of 1998, plaintiff expressed interest in the position for the 1997–98 school year, and Carol Moss, the athletic director, and Richard O'Donnell, the principal, forwarded plaintiff's name to Superintendent Helmer for appointment to the position. Prior to making their recommendation, Ms. Moss and Mr. O'Donnell discussed concerns they had about participation levels and a possible boycott by track athletes if plaintiff were appointed as the head coach. However, they recommended plaintiff because he was the only available candidate.

Prior to the February 9, 1998 Board meeting where the Spring 1998 appointments were to be made, Mr. Zalewski, a Board member, raised concerns about plaintiff's candidacy. Mr. Zalewski stated that he would difficulty supporting plaintiff's appointment as head varsity track coach. He based his opinion on concerns including inadequate supervision of practices, inappropriate assignment of athletes for specific events, and the possibility of a lack of participation in the program if plaintiff remained as head coach.

Superintendent Helmer suggested that an executive session should be held to discuss the issue. He did so because he did not want to put plaintiff's name forward for a vote during open session and create potential embarrassment for plaintiff. Accordingly, the Board withheld all appointments in public session and went into executive session to discuss Mr. Zalewski's concerns.

During the executive session, Mr. Zalewski raised the issues of students refusing to join the track team, a decline in track enrollment, and a lack of support for building a new track because of the decline. Mr. Zalewski also stated that practices were not well-supervised and that they were canceled on late notice. Additional unidentified Board members expressed concern and at least three Board members said that they would vote "no" on the appointment. Based upon the discussions during the executive session, plaintiff's name was not submitted for a vote at the February 9, 1998 Board meeting.

On February 10, 1998, Superintendent Helmer sent a letter to plaintiff stating that he had not recommended plaintiff's appointment to the Board. The letter notified plaintiff that the position was being re-posted and stated that "there is strong interest on the part of this district, its student athletes, parents and board of education in changing from the way the Boys Varsity Track program has operated over

the past several years." Prior to sending the letter, Superintendent Helmer asked Ms. Moss to confirm whether the concerns raised during the February 9, 1998 Board meeting were correct. Ms. Moss confirmed that the level of student participation in the track program was not good and that some athletes had stated that they would not try out for the track team if plaintiff were the head coach. In addition, she indicated that sometimes the practices were not properly supervised. At a later Board meeting, Ms. Moss confirmed some of the safety concerns and stated that plaintiff was not the strongest candidate, but she had recommended him because he was the only applicant.

Following the meeting, Ms. Moss reposted the position on request of the Board and Superintendent Helmer. Three candidates applied, including plaintiff. Ms. Moss forwarded the names to Superintendent Helmer for his review. On March 11, 1998, Superintendent Helmer recommended Matthew Shutts, one of the applicants, for the head varsity boys' track coach position. On March 16, 1998, the Board met again to consider the appointment and Mr. Shutts was appointed as head coach.

On December 22, 1998, plaintiff filed a complaint with this court alleging asserting three causes of action: (1) age discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"); (2) age discrimination under the New York Executive Law, Section 296; and (3) intentional infliction of emotional distress.

Currently before this court is defendant's motion for summary judgment dismissing the complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff has entered opposition to this motion.

## DISCUSSION

### I. Standard for Summary Judgment

The standard for summary judgment is well-settled. Rule 56 allows for summary judgment where the evidence demonstrates that "there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Summary judgment is properly regarded as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986) (quoting Federal Rule of Civil Procedure 1). A motion for summary judgment may be granted when the moving party carries its burden of showing that no triable issues of fact exist. *See Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990). In light of this burden, any inferences to be drawn from the facts must be viewed in the light most favorable to the non-moving party. *See id.; United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam). If the moving party meets its burden, the burden shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). To defeat a motion for summary judgment, however, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A dispute regarding a material fact is genuine "if evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. When reasonable minds could not differ as to the import of

the evidence, then summary judgment is proper. *See id.* at 250–251, 106 S.Ct. at 2511.

Summary judgment is appropriate in discrimination cases for "the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to commercial or other areas of litigation." *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.1985). The "impression that summary judgment is unavailable in discrimination cases is unsupportable." *McLee v. Chrysler Corp.,* 38 F.3d 67, 68 (1994). The Supreme Court has also recently reiterated that the trial courts should not "treat discrimination differently from other ultimate questions of fact." *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 147, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).

## II Age Discrimination Claim Under the Age Discrimination Employment Act

■ The ADEA applies to employees who are over the age of forty and prohibits arbitrary age discrimination in employment. *See* 29 U.S.C. §§ 621(b), 623(a)(1) & 631(a). The issue to be decided in such cases is "whether an employer discriminated against an employee on account of that person's age." *Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219, 1224 (2d Cir.1994). It is the plaintiff's burden to show discrimination in employment on account of age. *See id.*

■ The three-step burden-shifting analysis utilized for Title VII cases under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), is used for cases alleging age discrimination. Under the *McDonnell Douglas* analysis, a plaintiff must first prove by a preponderance of the evidence a *prima*

*facie* case of discrimination. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). A plaintiff who claims age discrimination has the burden of establishing four elements to prove a *prima facie* case. *See Hicks,* 509 U.S. at 506, 113 S.Ct. 2742; *Scaria v. Rubin,* 117 F.3d 652, 654 (2d Cir.1997) (per curiam). Plaintiff must show that he was (1) a member of the protected age group, (2) qualified for the position, (3) subjected to an adverse employment decision or discharge, and that (4) his discharge occurred under circumstances giving rise to an inference of discrimination. *See Austin v. Ford Models, Inc.,* 149 F.3d 148, 152 (2d Cir. 1998). To make the required showing, a plaintiff may rely on direct evidence of what the defendant did and said, but more often than not must depend on the cumulative weight of circumstantial evidence to make out a *prima facie* case. *See Luciano v. Olsten Corp.,* 110 F.3d 210, 215 (2d Cir.1997).

■ Once plaintiff has successfully established a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for its adverse employment action. *See Austin,* 149 F.3d at 153. Any stated reason is sufficient; the employer need not persuade the court that the proffered reason was the actual reason for its decision. *See Austin,* 149 F.3d at 153; *Fisher v. Vassar College,* 114 F.3d 1332, 1335–36 (2d Cir.1997) (en banc).

■■ If the employer makes this showing, the presumption of discrimination raised by plaintiff establishing his *prima facie* case drops out, and the burden shifts back to plaintiff to prove that discrimination was the real reason for the employment action. *See Hicks,* 509 U.S. at 511,

515, 113 S.Ct. 2742; *Fisher,* 114 F.3d at 1339. A reason cannot be proved to be a pretext for discrimination unless "it is shown *both* that the reason was false, *and* that discrimination was the real reason" for the adverse employment action. *Hicks,* 509 U.S. at 512, 113 S.Ct. at 2750 (emphasis added).

### A. *Prima Facie* Case

As stated above, plaintiff must prove the following in order to establish a *prima facie* case: (1) he was a member of the protected age group; (2) he was qualified for the position; (3) he was subjected to an adverse employment decision or discharge; and (4) his discharge occurred under circumstances giving rise to an inference of discrimination. For purposes of this motion, defendants admit that plaintiff satisfies the first three elements of the *prima facie* case.[2] However, defendants argue that the failure to re-appoint plaintiff as the head track coach did not occur under circumstances giving rise to an inference of discrimination.

■ Plaintiff's burden to prove a *prima facie* case is "minimal." *Tarshis v. Riese Org.,* 211 F.3d 30, 35 (2d Cir.2000). As such, the fourth element of the *prima facie* case may be satisfied by a showing that the plaintiff was replaced by someone outside his protected class. *See id.* at 36; *Schnabel v. Abramson,* 232 F.3d 83 (2d Cir.2000). Plaintiff has satisfied this minimal burden. Mr. Shutts, plaintiff's successor as head varsity track coach, was in his thirties at the time of his appointment. Therefore, he was not a member of the protected class and this fact is sufficient to give rise to the inference that plaintiff was the victim of discrimination.

### B. Legitimate, Non-discriminatory Reason for the Adverse Employment Action

■ Under *McDonnell Douglas,* defendants must articulate a legitimate, non-discriminatory reason why plaintiff was not re-appointed. Defendants' burden is minimal—any stated reason is sufficient and an employer does not need to persuade the court that the reason was the actual reason for its decision. *See Tarshis,* 211 F.3d at 36. Defendants have identified a specific reason for not re-appointing plaintiff—concerns regarding his performance as coach that were raised before the February 9, 1998 Board meeting and were subsequently confirmed to the Board's satisfaction. Therefore, defendants have articulated a "clear and specific" reason for not re-appointing plaintiff, "which, taken as true, would permit the conclusion that there was a non-discriminatory reason for the adverse action." *Carlton v. Mystic Transp., Inc.,* 202 F.3d 129, 136 (2d Cir.2000) (quoting *Hicks,* 509 U.S. at 509, 113 S.Ct. 2742) (internal quotations omitted).

### C. Real Reason for the Adverse Employment Action

■ Because defendants have articulated a legitimate, non-discriminatory reason for their decision, the presumption of discrimination disappears from the case, and the burden returns to the plaintiff to show that the articulated reason is pretextual and defendants' decision was actually motivated by impermissible discrimination. *See Hicks,* 509 U.S. at 511, 113 S.Ct. 2742. Therefore, plaintiff bears the ultimate burden of persuading the court that defen-

---

**2.** Defendants accurately point out that plaintiff was not discharged, but the court will treat the failure to re-appoint as an adverse

employment decision for purposes of the *prima facie* analysis.

dants discriminated against him. Plaintiff has not satisfied this burden.

In support of its claim that defendants' reason is pretextual, plaintiff merely argues that the reason is not true. Plaintiff states that Board members testified that they had no complaints concerning plaintiff until Mr. Zalewski discussed "rumors" with the Board prior to the February 9, 1998 meeting and that the Board requested Ms. Moss to re-post the position on the basis of these "rumors." Plaintiff claims that "[i]t is ludicrous to believe that such a group as a Board of Education would make a last minute decision based on rumors" and therefore, "it is very possible there was much more to the conversation that evening than what is being portrayed." *See* Plaintiff's Memorandum, p. 7. Therefore, plaintiff contends, there is an inference of pretext created by defendants' decision not to re-appoint plaintiff that precludes summary judgment.

### III. Age Discrimination Claim Under the New York Executive Law

 Under Article 15 of the Executive Law of the State of New York, Section 296, it is an unlawful discriminatory practice for an employer to refuse to hire or employ an individual because of his age. In adjudicating such a Human Rights Law claim, New York state courts use the burden-shifting framework developed by the Supreme Court in *McDonnell Douglas*. *See Ferrante v. American Lung Ass'n*, 90 N.Y.2d 623, 665 N.Y.S.2d 25, 687 N.E.2d 1308 (1997); *Laverack & Haines, Inc. v. New York State Div. of Human Rights*, 88 N.Y.2d 734, 650 N.Y.S.2d 76, 673 N.E.2d 586 (1996).

### IV Intentional Infliction of Emotional Distress Claim

Under New York law, a claim for intentional infliction of emotional distress requires a showing of: "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir.1999). Whether the conduct alleged may be reasonably regarded as so extreme and outrageous as to permit recovery is a matter for the court to determine in the first instance. *See id.* A litigant can establish a cognizable claim for intentional infliction of emotional distress "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Howell v. New York Post Co.*, 81 N.Y.2d 115, 122, 596 N.Y.S.2d 350, 612 N.E.2d 699 (1993) (internal citations omitted). The requirements for satisfying a claim for intentional infliction of emotional distress "are rigorous, and difficult to satisfy." *Id.* Therefore, courts must decline such a claim in cases where the alleged conduct was not sufficiently outrageous. *See Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir.1996).

### CONCLUSION

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED,** that defendant's motion for summary judgment is **GRANTED** and the complaint is hereby **DISMISSED** in its entirety. It is further

**ORDERED,** that the Clerk of the Court serve a copy of this Memorandum—Decision and Order upon the parties by regular mail.

**IT IS SO ORDERED.**