**Edward J. CONBOY, Eileen M. Conboy Individually and On Behalf of All Others Similarly Situated, Plaintiffs,**

v.

**AT & T CORP., and AT & T Universal Card Services Corp., Defendants.**

**No. 99 Civ. 0360(RJW).**

United States District Court, S.D. New York.

Feb. 4, 2000.

---

Rossbacher & Associates, Los Angeles, CA by Henry H. Rossbacher, James S. Cahill, Clara I. Duran Reed, of counsel, Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski, NY by Daniel T. Hughes, of counsel, for plaintiffs.

T. Jay Thompson, Basking Ridge, NJ, for defendant AT & T Corp.

Skadden, Arps, Slate, Meagher & Flom, New York by George A. Zimmerman, of counsel, for defendant AT & T Universal Card Services, Corp.

## OPINION

WARD, District Judge.

Defendants each move pursuant to Rule 12(b)(6), Fed.R.Civ.P., to dismiss plaintiffs' Class Action First Amended Complaint (hereinafter "complaint") for failure to state a claim upon which relief can be granted. For the following reasons, defendants' motions are granted and the complaint is dismissed.

## BACKGROUND

Plaintiffs Edward and Eileen Conboy bring this class action against defendant AT & T Corp. (hereinafter "AT & T") alleging violations of the Federal Telecommunications Act (hereinafter "Telecommunications Act" or "Act"), 47 U.S.C. §§ 151 *et seq.*, and regulations promulgated under the Act by the Federal Communications Commission (hereinafter "FCC"), 47 C.F.R. §§ 51.217 and 64.1201. They also assert claims against AT & T under the Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, and New York General Business Law (hereinafter "N.Y. Gen. Bus. Law") § 349. Finally, plaintiffs assert a claim against AT & T for common law intentional infliction of emotional distress. Plaintiffs bring this class action against defendant AT & T Universal Card Services Corp. (hereinafter "UCS") alleging a violation of N.Y. Gen. Bus. Law § 349, and asserting a claim for common law intentional infliction of emotional distress.

## I. Parties

Plaintiffs are individuals residing in New York State. They are customers of AT & T. AT & T is a New York corporation with its principal executive offices located in New Jersey. Plaintiffs allege that AT & T is subject to the mandates of the Telecommunications Act and FCC regulations.

UCS is a Delaware corporation with its principal place of business in Florida. According to the complaint, UCS was AT & T's credit card unit and consumers could receive AT & T Universal Visa or MasterCard credit cards through UCS. UCS was a subsidiary or affiliate of AT & T until April 2, 1998, when AT & T transferred UCS to Citicorp, an entity unaffiliated with AT & T.

## II. Factual Allegations

The facts are taken from plaintiffs' complaint and are assumed to be true for purposes of this motion. AT & T provides plaintiffs' long-distance telephone service. It charges plaintiffs for long distance telephone calls through an itemized billing statement. The statement contains information concerning the number and type of calls made, the telephone number from which the calls originated, the date the calls were made, the destination and telephone numbers called, as well as the time, rate and cost of each call.

Plaintiffs pay a monthly fee for non-published service, which is designed to prevent the release of customers' unlisted names, addresses, and telephone numbers. Accordingly, plaintiffs' personal information was neither available in any directory nor accessible through directory assistance. Moreover, plaintiffs never authorized the release of any of this information to UCS, Citicorp, or any other entity.

Plaintiffs allege that AT & T has disseminated their customer proprietary network information (hereinafter "CPNI"),[1] telephone bill information, unlisted telephone numbers, and billing names and addresses to UCS, Citicorp, and other entities without plaintiffs' consent. According to plaintiffs, AT & T continues to disclose this information.

Maria Conboy is plaintiffs' adult daughter-in-law. She applied for, and received an AT & T Universal MasterCard through

---

1. In relevant part, CPNI means "information contained in the bills pertaining to telephone exchange service or telephone toll service received by a customer of a carrier; except that such term does not include subscriber list information." 47 U.S.C. § 222(f)(1)(B).

UCS while UCS was a subsidiary or affiliate of AT & T. Plaintiffs were not guarantors of their daughter-in-law's credit card and were not otherwise obligated to pay her debt to UCS. They did not agree to be contacted by UCS regarding their daughter-in-law's account with UCS nor did they request any communications from UCS for any other reason. Maria Conboy never provided UCS with plaintiffs' names, address, or telephone numbers. Furthermore, she was never listed or named as a customer on plaintiffs' telephone account with AT & T.

From May to June 1998, representatives of UCS telephoned plaintiffs at their unlisted home telephone number between thirty and fifty times seeking information regarding Maria Conboy's whereabouts. The telephone calls were made repeatedly and at unusual hours. Plaintiffs informed representatives of UCS that their daughter-in-law did not reside with them and requested that the telephone calls cease.

On or about June 28, 1998, Andrew Coleman, a representative of UCS, telephoned plaintiffs at their home requesting information about Maria Conboy. During the conversation, Coleman revealed that he knew plaintiffs' unlisted personal information. He also suggested that he knew the details of plaintiffs' telephone bill, including the cost and destination of telephone calls made by plaintiffs.

Plaintiffs allege that AT & T is using customers' billing statements not only to provide customers with details of their service charges, but also to help UCS and other entities collect credit card debts. They also claim that the statements do not provide a clear warning that AT & T is assisting third parties in collecting a debt, and that customers' information may be used for that purpose.

## DISCUSSION

### I. Standard for Motion to Dismiss

Defendants move to dismiss plaintiffs' complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), Fed.R.Civ.P. In deciding such a motion, the Court must accept as true the factual allegations set forth in the complaint and must draw all reasonable inferences in plaintiffs' favor. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996). The Court, therefore, "may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon,* 467 U.S. at 73, 104 S.Ct. 2229; *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### II. Count I Alleging Violations of 47 U.S.C. § 222(c), and 47 C.F.R. §§ 51.217(c)(3)(iii) and 64.1201(c)(2) Against AT & T

#### A. Private Action For Damages Based on a Violation of Section 222(c)

Plaintiffs allege that AT & T violated Section 222(c) of the Telecommunications Act. That section governs the proper use of CPNI and provides:

> Except as required by law or with the approval of the customer, a telecommunications carrier that receives or obtains customer proprietary network information by virtue of its provision of a telecommunications service shall only use, disclose, or permit access to individually identifiable customer proprietary network information in its provision of (A) the telecommunications service from which such information is derived, or (B) services necessary to, or used in, the provision of such telecommunications service, including the publishing of directories.

47 U.S.C. § 222(c)(1).

Sections 206 and 207 of the Telecommunications Act govern private rights

of action.[2] Taken together, these sections provide that a suit may be brought either before the FCC or in federal court, but not both, for damages resulting from a common carrier's violation of specific provisions of the Telecommunications Act. *Ivy Broadcasting Co. v. American Tel. & Tel. Co.*, 391 F.2d 486, 489 (2d Cir.1968).

In *RCA Global Communications, Inc. v. Western Union Tel. Co.*, 521 F.Supp. 998 (S.D.N.Y.1981), the court addressed whether plaintiff stated a claim for relief pursuant to Sections 206 and 207. In dismissing one of plaintiff's claims, the court found that plaintiff failed to allege damages resulting from a violation of the Act. The court stated:

> Sections 206 and 207 of the [Telecommunications Act] by their terms provide a private cause of action for a party *damaged* by another's violation of the [Telecommunications Act]. [Plaintiff] has failed to allege any damage flowing from the lack of a tariff or to articulate any possible damages which it may be able to prove at trial.

*Id.* at 1006 (emphasis in the original). *See also In re Matter of Communications Satellite Corp.*, 97 F.C.C.2d 82, 90 at ¶ 25 (1984) (finding that in order to state a claim under Sections 206 and 207, "a complainant must allege and prove specific damages flowing from violations of the Act").

■■■ AT & T moves to dismiss Count I on the ground that plaintiffs have no private right of action to enforce Section 222 because they have not suffered damages as required by Sections 206 and 207. Plaintiffs counter that they have suffered damages.[3] First, they argue that they cations Act. *See In re Communications Satellite Corp.*, 97 F.C.C.2d 82, 91 at ¶¶ 24–26 (1984); *see also International Telecomm. Exch. Corp. v. MCI Telecomm. Corp.*, 892 F.Supp. 1520, 1545 (N.D.Ga.1995) (stating that "[d]amages are not presumed under the private right of action provided for in Section 206" of the Telecommunications Act) (citing *RCA Global Communications, Inc. v. Western Union Tel. Co.*, 521 F.Supp. 998, 1006 (S.D.N.Y.1981); *In re Communications Satellite Corp.*, 97 F.C.C.2d 82).

The Court also notes that cases brought under the Interstate Commerce Act (hereinafter "ICA"), on which the Telecommunications Act is modeled, are persuasive authority in interpreting analogous provisions of the Telecommunications Act. *See Swain v. AT&T Corp.*, No. CivA3:94–CV–1088–D, 1997 WL 573464, at *1 n. 3 (N.D.Tex. Sept. 9, 1997) (citing *MCI Telecomm. Corp. v. AT & T Co.*, 512 U.S. 218, 229–30, 114 S.Ct. 2223, 129 L.Ed.2d 182 (1994)). Under 49 U.S.C. § 11704, which is the section of the ICA that is analogous to 47 U.S.C. § 206, recovery " 'cannot be had unless it is shown that, as a result of defendant's acts, damages in some amount susceptible of expression in figures resulted.' " *Interstate Commerce Commission v. United States ex rel. Campbell et al.*, 289 U.S. 385, 390, 53 S.Ct. 607, 77 L.Ed. 1273 (1933) (quoting *Keogh v. Chicago & N.W.R. Co.*, 260 U.S. 156, 165, 43 S.Ct. 47, 67 L.Ed. 183 (1922)). Thus, damages are not presumed under the ICA. *See id.* (citations omitted).

---

2. Section 206 provides:
 > In case any common carrier shall do, or cause or permit to be done, any act, matter, or thing in this chapter prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this chapter required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter, together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case.

 47 U.S.C. § 206.
 > Section 207 provides:
 > Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the Commission as hereinafter provided for, or may bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction; but such person shall not have the right to pursue both such remedies.

 47 U.S.C. § 207.

3. Plaintiffs argue in the alternative that they do not have to prove damages because damages are presumed. However, the FCC and at least one other district court to address the issue, have concluded that damages are not presumed for violations of the Telecommuni-

have paid AT & T a monthly fee to keep their names, address, and telephone number unlisted. Second, they argue that they have paid AT & T for telephone services which include the privacy protections of the Telecommunications Act. According to plaintiffs, the actions of AT & T deprived them of the value of both of these payments.

Plaintiffs' first argument must fail because, as AT & T correctly points out, the fee for non-published service to which plaintiffs refer, is paid to Bell Atlantic, and not AT & T. Plaintiffs' telephone bill dated May 7, 1998, attached to the complaint as Exhibit 1 (hereinafter "Ex. 1"), is divided into two sections: the first for Bell Atlantic charges and the second for AT & T charges. Page "2 of 4" of the Bell Atlantic portion of the bill indicates that plaintiffs pay $1.95 for "non-published service." Complaint, Ex. 1. There is no similar charge in the AT & T portion of the bill. The portion of the final amount due on the total bill that is attributable to AT & T is $23.54. This amount is made up of "Service order/other charges and credits," ($.95) (which, as indicated in another part of the AT & T portion of the bill, is for a "Carrier Line Charge"), "Itemized calls" ($20.60), "State/local surcharges" ($.84), "Federal Tax" ($.66), and "State and Local Taxes" ($.49). Complaint, Ex. 1. None of these payments is for non-published service. Therefore, plaintiffs' argument that they suffered damages because of the fee they paid for non-published service must fail.[4]

Plaintiffs' second argument in support of their claim for damages must also fail. They argue that their payments to AT & T for AT & T service includes payment for the privacy protections of the Telecommunications Act, and that AT & T's disclosure of plaintiffs' private information deprived them of the value of this payment. Plaintiffs' argument cannot support a claim for damages because there is no monetary value attached to AT & T's compliance with the Telecommunications Act. By paying AT & T $23.54 plaintiffs got what they paid for, namely, long distance service. As discussed above with reference to plaintiffs' AT & T bill, every penny paid to AT & T is accounted for, either in the form of itemized charges, surcharges, or taxes. In order to find that plaintiffs paid AT & T to abide by the Telecommunications Act, the Court would have to find that payment to AT & T for long distance service implicitly includes payment for AT & T's compliance with the Act. However, the Court cannot do this. AT & T is required to comply with the provisions of the Telecommunications Act, not because it receives a fee from its customers, but because it is a common carrier governed by the Act. Plaintiffs concede as much in their complaint by alleging that AT & T is subject to the Telecommunications Act because it is a "common carrier" under 47 U.S.C. § 153(10). *See* Complaint at ¶ 7. They do not allege that AT & T is subject to the Act because it receives fees from its customers.

In sum, although plaintiffs have alleged that AT & T has violated the Telecommunications Act, they have not demonstrated

In support of their argument that damages are presumed in this case, plaintiffs cite *Memphis Community Sch. Dist. v. Stachura*, 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986), in which the Supreme Court held that damages for a violation of a person's civil rights under 42 U.S.C. § 1983 may be presumed when a constitutional injury is "likely to have occurred but [is] difficult to establish." *Memphis Community Sch. Dist.*, 477 U.S. at 310–11, 106 S.Ct. 2537. Plaintiffs argue that AT & T's actions in this case constitute a violation of their constitutional rights

under the Fourth and Fourteenth Amendments. Even if AT & T had violated plaintiffs' constitutional rights, however, plaintiffs have not pled a violation of Section 1983, or of their privacy rights in their complaint. *Memphis Community School Dist.* is therefore inapplicable to the present case.

4. Plaintiffs have only included one telephone bill in their complaint and they have not indicated that other statements differ from the one attached to their complaint.

that they have suffered any damages. Therefore, plaintiffs have no private right of action and that portion of Count I of the complaint seeking damages based on a violation of Section 222(c) is dismissed.

## B. Private Action for Damages Based on a Violation of 47 C.F.R. §§ 51.217(c)(3)(iii) and 64.1201(c)(2) Against AT & T

■ Plaintiffs allege in Count I that AT & T violated FCC regulations promulgated under the Telecommunications Act. In particular, plaintiffs contend that AT & T violated 47 C.F.R. § 51.217(c)(3)(iii), which states that a local exchange carrier (hereinafter "LEC") "shall not provide access to unlisted telephone numbers, or other information that its customer has asked the LEC not to make available." They also contend that AT & T violated 47 C.F.R. § 64.1201(c)(2), which prevents a telecommunications service provider from disclosing the billing name and address information of any subscriber to any third party.

AT & T moves to dismiss this portion of the complaint on the grounds that plaintiffs have no private right of action to enforce AT & T's alleged violations of FCC regulations. Plaintiffs do not directly address this issue in their papers. Nevertheless, the Court has considered the issue and agrees with AT & T that plaintiffs do not have a private right of action.

"The primary source of a private right of action is the text of a statute," *American Tel. & Tel. Co. v. M/V Cape Fear*, 967 F.2d 864, 866 (3d Cir.1992). However, the text of the FCC regulations itself does not provide the Court with any guidance. There is no provision in the regulations that either prohibits or provides for a private right of action. An examination of other regulations promulgated pursuant to the Telecommunications Act and other statutes reveals that when the drafters wanted to prohibit, or provide for, private rights of action they did so expressly in the regulation itself. *See, e.g.,* 47 C.F.R. § 79.1 (regulating closed captioning of video programming and stating, "[n]othing in this section shall be construed to authorize any private right of action to enforce any requirement of this section. The Commission shall have exclusive jurisdiction with respect to any complaint under this section."); *see also* 5 C.F.R. § 1305.5 (prohibiting private rights of action); 8 C.F.R. § 208.18(e)(3) (same); 20 C.F.R. §§ 627.500(d), 628.525, and 636.1(c)(3) (same); 40 C.F.R. § 300.400(i)(3) (same); 45 C.F.R. § 98.43(e) (same); 49 C.F.R. § 219.17(b) (same); 17 C.F.R. § 200.1(j) (providing for private rights of action). Therefore, the absence of an express statement in the regulations at issue here regarding private rights of action does not lead the Court to assume anything regarding the drafters' intent.

■ Furthermore, the text of the Telecommunications Act is unhelpful in determining whether a private right of action exists to enforce FCC regulations. As discussed above, plaintiffs do have a private right of action under Sections 206 and 207 of the Telecommunications Act for damages suffered as a result of a violation of the Act. However, those sections do not apply to FCC regulations. Both sections apply exclusively to violations of "this chapter," meaning violations of the Telecommunications Act itself. *See, e.g.,* Peter W. Huber, Michael K. Kellogg, John Thorne, *Federal Telecommunications Law,* § 3.14.3 at 317 (2d ed.1999) (hereinafter "Huber") ("The section 206 right of action encompasses only claims that a carrier has violated the *Act,* not for example, violations of FCC regulations or general tort or contract claims.") (emphasis in original). No other provision of the Act addresses a private right of action to enforce FCC regulations.

Because there is nothing in the regulations or Telecommunications Act expressly prohibiting or providing for a private right of action, the Court must decide whether one can be implied. In *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Supreme Court established a

four-part test to determine whether a statute contains an implied private right of action: (1) whether the statute was enacted to benefit a special class; (2) whether the drafters intended to create a private right of action; (3) whether a private right of action would be consistent with the purposes of the statute; (4) whether the cause of action is one not traditionally relegated to the states. *Id.* at 78, 95 S.Ct. 2080. Following *Cort,* the Supreme Court in *Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979), narrowed the analysis to the second factor, whether the drafters intended to create a private right of action. *Id.* at 568, 99 S.Ct. 2479; *see also McClellan v. Cablevision of Connecticut, Inc.,* 149 F.3d 161, 164–65 (2d Cir.1998) (noting that the second factor, legislative intent, is central to the *Cort* analysis). While the second factor remains central to the analysis, the other three factors may be relied on to determine legislative intent. *Id.* at 575–76, 99 S.Ct. 2479. Courts determining whether a private right of action can be implied under the Telecommunications Act and FCC regulations have looked to the first two factors in their analysis. *See M/V Cape Fear,* 967 F.2d at 866–67; *Lechtner v. Brownyard,* 679 F.2d 322, 327 (3d Cir. 1982); *see also Touche Ross,* 442 U.S. at 580, 99 S.Ct. 2479 (Brennan, J., concurring) (stating that unless the first two factors point towards a private right, the remaining factors "cannot by themselves be a basis for implying a right of action").

■ The first question is whether the Telecommunications Act and regulations promulgated thereunder were enacted for the benefit of a special class of which plaintiffs are members. The Court finds that they were not. In *M/V Cape Fear* the court found that although the Submarine Cable Act, 47 U.S.C. §§ 21–39, must have been passed with certain beneficiaries in mind, it did not clearly establish a private right of action for any particular class. 967 F.2d at 870. Instead, the Act could more properly be read as benefitting all consumers of telecommunications services. *Id.* The same is true in this case. The purpose of the Telecommunications Act is not to benefit individual plaintiffs, but " 'to protect the public interest in communications.' " *Lechtner,* 679 F.2d at 327 (quoting *Scripps–Howard Radio, Inc. v. FCC,* 316 U.S. 4, 14, 62 S.Ct. 875, 86 L.Ed. 1229 (1942)). Therefore, the first factor in the *Cort* analysis weighs against implying a private right of action.[5]

Turning to the second factor, it does not appear that Congress or the drafters of the regulations at issue here intended to create a private right of action on behalf of plaintiffs because doing so would conflict with the broad powers Congress gave to the FCC. The FCC was created in order to centralize authority with respect to telecommunications and other forms of interstate wire and radio communications. 47 U.S.C. § 151. Pursuant to this role, the FCC is primarily responsible for the interpretation and implementation of the Telecommunications Act and FCC regulations. *See, e.g., id.* (granting to the FCC the power to "execute and enforce the provisions of" the Telecommunications Act). These broad powers granted to the FCC to enforce the Act would be inconsistent with a private right of action because "[p]rivate litigation tends to transfer regulatory interpretation and discretion from the agency to the courts," *Caceres Agency, Inc. v. Trans World Airways, Inc.,* 594

---

5. Even if plaintiffs did benefit from the protections of the particular regulations at issue in this case, the Court would not necessarily imply a private right of action on their behalf. "The focus of the Act is the general public, with the FCC, not the private litigant, as its champion. . . . '[T]he mere fact that [a] statute was designed to protect [certain groups] does not require the implication of a private cause of action for damages on their behalf.' " *Lechtner v. Brownyard,* 679 F.2d 322, 327 (3d Cir.1982) (quoting *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 24, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979)). If the Court finds that there is no intent to create a private right of action to enforce the regulations, the benefit conferred on plaintiffs would not be enough to imply a private right of action.

F.2d 932, 934 (2d Cir.1979), and the courts do not possess the same expertise as the FCC in telecommunications matters. *See also* Richard E. Wiley, R. Michael Senkowski, Jeffrey S. Linder, *Communications Litigation Involving Entities Subject to the FCC's Jurisdiction,* 4 Bus. & Com. Litig. Fed. Cts. § 62.4 (1998) ("One of the primary reasons for the establishment of an administrative agency is to foster a consistent, national policy within the agency's field of expertise.").

Finally, as discussed above, when Congress created a private right of action to enforce the Telecommunications Act, it limited that right to enforcement of the Act itself. It did not create a private right of action to enforce FCC regulations. This Court is wary of "alter[ing] the congressional design with remedies of its own choosing," *Caceres,* 594 F.2d at 933–34 (citations omitted), by creating an implied private right of action under an Act in which Congress created an elaborate enforcement scheme.

Accordingly, the portion of Count I of the complaint that alleges a violation of these regulations is dismissed.

## C. Injunctive Relief Under the Telecommunications Act

■ Plaintiffs seek to enjoin AT & T from violating Section 222 of the Telecommunications Act. AT & T argues that the Act does not authorize injunctive relief under the circumstances of this case. The Court agrees.

■ An action under Sections 206 and 207 of the Telecommunications Act is limited to liability for damages and therefore cannot be the basis for injunctive relief. Section 401(a) of the Act provides for injunctive relief, but only when an application is brought by the United States Attorney General at the request of the FCC. *Speech v. Reno,* No. 98 CIV. 2680(MBM), 1999 WL 147743, at *2 (S.D.N.Y. March 18, 1999), *aff'd,* 200 F.3d 63 (2d Cir.1999) (per curiam).[6] Therefore, Section 401(a) cannot be the basis for injunctive relief by private plaintiffs. *See, e.g., New England Tel. and Tel. Co. v. Public Utilities Comm'n of Maine,* 565 F.Supp. 949, 956 (D.Me.1983) ("Section 401 reflects the congressional mandate given the FCC; it does not empower private enforcement."); Huber, *Federal Telecommunications Law,* § 3.13.3 at p. 318 ("A private party has no right to seek injunctive relief to enforce 'provisions' of the Communications Act. Section 401(a) reserves that authority to the Commission."). Since no other provision of the Telecommunications Act grants plaintiffs the right to seek injunctive relief, the Court finds that injunctive relief is not available to plaintiffs in this case.[7]

6. Section 401(a) states:

> The district courts of the United States shall have jurisdiction, upon application of the Attorney General of the United States at the request of the Commission, alleging a failure to comply with or a violation of any of the provisions of this chapter by any person, to issue a writ or writs of mandamus commanding such person to comply with the provisions of this chapter.

47 U.S.C. § 401(a). Although the statute refers to "writs of mandamus," it authorizes injunctive relief. *United States v. Medina,* 718 F.Supp. 928, 930 n. 6 (S.D.Fla.1989) (citations omitted).

7. The Telecommunications Act does contain certain exceptions to the general rule against private actions for injunctive relief. First, private litigants are entitled to enforce FCC "orders." *See* 47 U.S.C. § 401(b) ("If any person fails or neglects to obey any order of the Commission other than for the payment of money, while the same is in effect, the Commission *or any party injured thereby,* or the United States, by its Attorney General, may apply to the appropriate district court of the United States for the enforcement of such order.") (emphasis added). Second, private injunctive relief is available where a carrier is violating a provision of the Act and the private litigant is prevented from "receiving service in interstate or foreign communication by wire." 47 U.S.C. § 406.

In addition to these enforcement provisions, Section 227 of the Telecommunications Act, governing restrictions on the use of telephone equipment, provides for a private right

Plaintiffs argue that the Court nevertheless has the authority to grant injunctive relief because the statute does not contain any explicit language prohibiting such relief, and that federal courts have inherent equitable powers except where by the clearest command Congress indicates otherwise. In support of their argument, plaintiffs cite *Porter v. Warner Holding Co.*, 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946). The Court does not believe that *Porter* supports plaintiffs' argument.

In *Porter*, the Supreme Court addressed whether a federal court has the power to order restitution of rents under the Emergency Price Control Act of 1942. Section 205(a) of that statute authorized federal courts to enjoin practices that violated the statute, but did not specifically grant courts the power to order restitution of rents. The Court held that where a statute creates federal court jurisdiction to order an equitable remedy, all inherent equitable powers of the district court are available for the proper and complete exercise of that jurisdiction unless otherwise provided by statute. *Porter*, 328 U.S. at 397–98, 66 S.Ct. 1086. The Court went on to say that

> the comprehensiveness of this equitable jurisdiction is not to be denied or limited in the absence of a clear and valid legislative command. Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied.

*Id.* at 398, 66 S.Ct. 1086. The *Porter* case thus stands for the proposition that this Court may exercise its inherent equitable powers once its equity jurisdiction is properly invoked and the scope of such jurisdiction is not limited by a clear statement from Congress.

However, unlike *Porter*, this Court's jurisdiction to enjoin violations of the Telecommunications Act cannot be invoked by plaintiffs, and therefore, the Court cannot exercise its inherent equitable powers. If this Court's equity jurisdiction were invoked by application of the United States Attorney General at the request of the FCC, as is required by Section 401(a), then under *Porter* and its progeny, the Court would be free to exercise its inherent equitable powers to grant full and complete injunctive relief. *See, e.g., Porter*, 328 U.S. at 398–99, 66 S.Ct. 1086 (finding that the district court could enter an order compelling the restitution of rents once its equity jurisdiction had been invoked under Section 205(a)); *see also United States v. Universal Management Serv., Inc.*, 191 F.3d 750, 760–62 (6th Cir.1999) (finding that the district court could exercise the full scope of its inherent equitable powers where the court's equity jurisdiction was invoked by Section 332 of the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 332, and there was no clear command by Congress excluding certain forms of relief). But because this is not a case where the Court's equity jurisdiction has been properly invoked, plaintiffs' reliance on *Porter* is misplaced.

The Court has determined that plaintiffs have not suffered damages under Sections 206 and 207, have no private right of action under the FCC regulations, and no private right of action for injunctive relief. Therefore, Count I of the complaint is dismissed in its entirety for failure to state a claim upon which relief can be granted.

### III. Count II Alleging a Violation of the FDCPA, 15 U.S.C. § 1692e(11) Against AT & T

 In Count II, plaintiffs assert that AT & T's failure to disclose in plaintiffs'

---

of action to seek injunctive relief in state court, *see* 47 U.S.C. § 227(b)(3)(A), and Section 274, containing certain electronic publishing restrictions on "Bell operating companies," provides for a private right of action to

seek a cease and desist order before the FCC or an injunction in federal district court. *See* 47 U.S.C. § 274(e)(2). However, none of these provisions are implicated by plaintiffs here.

telephone bill that AT & T was attempting to collect a debt on behalf of UCS gives rise to a claim under the FDCPA, 15 U.S.C. § 1692e(11). That section provides in relevant part that it is a violation of the FDCPA for a debt collector to fail to disclose "in the initial written communication with the consumer ... that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose." 15 U.S.C. § 1692e(11).[8]

AT & T first moves to dismiss Count II on the ground that AT & T is not a "debt collector." The Court finds that plaintiffs have adequately alleged that AT & T is a "debt collector" under the FDCPA. In relevant part, a "debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Plaintiffs allege that AT & T is a debt collector because it collects or attempts to collect, directly or indirectly, debts owed to another. Complaint at ¶ 7. The Court accepts that this allegation is true as it must for purposes of this motion to dismiss. *See Jenkins v. Heintz*, 25 F.3d 536, 538 (7th Cir.1994), *aff'd*, 514 U.S. 291, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995); *see also Sluys v. Hand*, 831 F.Supp. 321, 325–26 (S.D.N.Y.1993) (declining to grant dismissal of the complaint based on defendant's uncorroborated denial of debt collection activity); *Torres v. American Telephone & Telegraph Co. Inc.*, No. 88 C 2030, 1988 WL 121547 at *2 (N.D.Ill. Nov.9, 1988) (accepting as true plaintiff's allegation that AT & T was a debt collector under the second sentence of 15 U.S.C. § 1692a(6)).

AT & T next claims that plaintiffs have not stated a claim under Section 1692e(11) because they are not "consumers" under the FDCPA. Section 1692e(11) makes it a violation to fail to disclose debt collection information in communications "with the consumer." The term "consumer" is defined as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). Plaintiffs concede that they do not fall under this definition because they are not obligated or allegedly obligated to pay their daughter-in-law's debt to UCS. Since plaintiffs are not consumers under the statute and Section 1692e(11) only regulates the disclosure of information to "the consumer," AT & T's failure to disclose to plaintiffs that it was assisting in the collection of a debt does not violate Section 1692e(11).

The Court notes that other subsections of Section 1692e are not limited to communications with consumers, and therefore, plaintiffs may have been able to state a claim for a violation of one of these other subsections.[9] Furthermore, Section 1692e presents a non-exhaustive list of

---

**8.** The full text of Section 1692e(11) states:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

...

(11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector,

except that this paragraph shall not apply to a formal pleading made in connection with a legal action.
15 U.S.C. § 1692e(11).

**9.** In addition to possibly stating a claim under the other subsections of 1692e, plaintiffs may have been able to state a claim under other sections of the FDCPA. The protection of the FDCPA is not limited to the statutory definition of "consumer" under Section 1692a(3), but is broad enough to encompass "any person" as that term is used in Section 1692k. Section 1692k, which is the general enforcement provision of the FDCPA, states, "[e]xcept as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect

prohibited activities. *Clomon v. Jackson,* 988 F.2d 1314, 1318 (2d Cir.1993). Thus, "a debt collection practice can be a 'false, deceptive, or misleading' practice in violation of § 1692e even if it does not fall within any of the subsections of § 1692e." *Id.* However, plaintiffs have specifically invoked Section 1692e(11). *See* Complaint at ¶ 65. Given the express limitation in Section 1692e(11), the Court finds that plaintiffs have failed to state a claim for a violation of that section and therefore, Count II is dismissed.

## IV. Counts III and IV Alleging State Law Claims Against AT & T

Plaintiffs have asserted state law claims against AT & T in Counts III and IV of the complaint. Having dismissed all federal claims brought by plaintiffs, the Court declines to exercise supplemental jurisdiction over plaintiffs' state law claims and dismisses those claims pursuant to 28 U.S.C. § 1367(c)(3). *See, e.g., Puerto Rico Tel. Co. v. Telecommunications Regulatory Bd. of Puerto Rico,* 189 F.3d 1, 19 (1st Cir.1999) (upholding district court's decision to decline to exercise supplemental jurisdiction over state law claims where Telecommunications Act claim, and other federal law claims, were dismissed).[10]

## V. Count V Alleging A Violation of N.Y. Gen. Bus. Law § 349 Against UCS

In Count V, plaintiffs allege that UCS violated N.Y. Gen. Bus. Law

to *any person* is liable to such person ..." 15 U.S.C. § 1692k(a) (emphasis added). This language "is couched in the broadest possible language." *Riveria v. MAB Collections, Inc.,* 682 F.Supp. 174, 175 (W.D.N.Y.1988). Accordingly, "[a]ny person who comes in contact with proscribed debt collection practices may bring a claim." *Id.* (citing *Whatley v. Universal Collection Bureau, Inc.,* 525 F.Supp. 1204, 1206 (N.D.Ga.1981)). Thus, plaintiffs may bring an action under the FDCPA although they are not consumers under the statute. Nevertheless, plaintiffs have failed to state a claim for a violation of Section 1692e(11) because that subsection specifically regulates communications "with the consumer."

§ 349(a) by engaging in "[d]eceptive acts or practices." N.Y. Gen. Bus. Law § 349(a). To state a claim under Section 349(a), plaintiffs must allege a material deceptive act or practice directed to consumers that caused actual harm. *Marcus v. AT&T Corp.,* 138 F.3d 46, 63–64 (2d Cir.1998) (citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,* 85 N.Y.2d 20, 623 N.Y.S.2d 529, 647 N.E.2d 741 (1995), *and McGill v. General Motors Corp.,* 231 A.D.2d 449, 647 N.Y.S.2d 209 (1st Dep't 1996)); *accord S.Q.K.F.C., Inc. v. Bell Atlantic Tricon Leasing Corp.,* 84 F.3d 629, 636 (2d Cir. 1996). "An act is deceptive within the meaning of the New York statute only if it is likely to mislead a reasonable consumer." *Marcus,* 138 F.3d at 64 (citing *Oswego,* 85 N.Y.2d at 26, 623 N.Y.S.2d 529, 647 N.E.2d 741, *and Gershon v. Hertz Corp.,* 215 A.D.2d 202, 203, 626 N.Y.S.2d 80 (1st Dep't 1995)). Whether representations or omissions are likely to mislead a reasonable consumer acting under similar circumstances may be determined as a matter of law or fact. *Oswego,* 85 N.Y.2d at 26, 623 N.Y.S.2d 529, 647 N.E.2d 741.

Plaintiffs allege that UCS has engaged in "deceptive acts or practices" in violation of Section 349 by violating a different provision of the N.Y. Gen. Bus. Law, Section 601(6). That section provides: "No principal creditor, as defined by this article, or his agent shall: ... (6) Communicate with

**10.** Although the Court will not exercise supplemental jurisdiction over plaintiffs' state law claims against AT & T, the Court will address plaintiffs' state law claims against UCS. While plaintiffs have not invoked diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), and have not alleged that the amount in controversy exceeds $75,000, the complaint appears to suggest that diversity does exist between plaintiffs and UCS, and therefore, the Court has determined that it should address these claims. *See* Complaint at ¶¶ 5, 6, and 8.

the debtor or any member of his family or household with such frequency or at such unusual hours or in such a manner as can reasonably be expected to abuse or harass the debtor." N.Y. Gen. Bus. Law § 601(6). In support of their argument, plaintiffs cite the "Practice Commentaries" following Section 349, which state that conduct involving "deceptive debt collection practices in violation of GBL Art. 29–H [ (Section 601) ]," would appear to be covered by Section 349. Givens, *Practice Commentaries*, McKinney's General Business Law Article 22–A, p. 565, 566. However, the Practice Commentaries clearly refer to *deceptive* debt collection practices, not all debt collection practices. While other violations of Section 601 may be sufficiently deceptive to constitute a claim under Section 349, the conduct alleged by plaintiffs is not.[11]

Plaintiffs allege in their complaint that UCS violated Section 349 by calling plaintiffs numerous times at unusual hours. Complaint at ¶¶ 99–100. While this conduct may be reprehensible and harassing, it is not deceptive because there is no indication that the telephone calls were for any purpose other than for what they purported to be.

Moreover, by alleging that a violation of Section 601 necessarily constitutes a deceptive act under Section 349, plaintiffs are trying to avoid the lack of a private right of action to enforce Section 601. Under the enforcement provision for Section 601,

"[t]he attorney general or the district attorney of any county may bring an action in the name of the people of the state to restrain or prevent any violation of this article or any continuance of any such violation." N.Y. Gen. Bus. Law § 602(2). Allowing plaintiffs to plead a cause of action under Section 601(6) by alleging that a violation of that statute necessarily constitutes a deceptive act under Section 349 appears contrary to the New York Legislature's intent and inconsistent with the statutory scheme. The Legislature, by creating a private right of action to enforce Section 349, clearly did not intend to authorize private enforcement of Section 601, especially where Section 601 contains its own enforcement provision which explicitly dictates who can enforce that section. Therefore, plaintiffs cannot state a claim for deceptive acts under Section 349 merely by alleging a violation of Section 601(6).

Accordingly, the Court finds that plaintiffs have failed to state a claim against UCS under N.Y. Gen. Bus. Law § 349 and therefore, UCS' motion to dismiss Count V of the complaint is granted.

### VI. Count VI Alleging Common Law Intentional Infliction of Emotional Distress Against UCS

In Count VI, plaintiffs allege that UCS is liable to plaintiffs for intentional infliction of emotional distress. Under New York law, a claim for intentional

---

**11.** For example, conduct violating other subsections of Section 601 might be a violation of Section 349 because these subsections refer to deceptive conduct. They state:

No principal creditor, as defined by this article, or his agent shall:
(1) Simulate in any manner a law enforcement officer, or a representative of any governmental agency of the state of New York or any of its political subdivisions; or
(2) Knowingly collect, attempt to collect, or assert a right to any collection fee, attorney's fee, court cost or expense unless such cha[r]ges are justly due and legally chargeable against the debtor; or
(3) Disclose or threaten to disclose information affecting the debtor's reputation for

credit worthiness with knowledge or reason to know that the information is false; or
. . .
(7) Threaten any action which the principal creditor in the usual course of his business does not in fact take; or
(8) Claim, or attempt to threaten to enforce a right with knowledge or reason to know that the right does not exist; or
(9) Use a communication which simulates in any manner legal or judicial process or which gives the appearance of being authorized, issued or approved by a government, governmental agency or attorney at law when it is not.
N.Y. Gen. Bus. Law § 601(1), (2), (3), (7), (8), (9).

infliction of emotional distress consists of four elements: (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress. *Stuto v. Fleishman,* 164 F.3d 820, 827 (2d Cir.1999) (citing *Howell v. New York Post Co.,* 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 612 N.E.2d 699 (1993)).

Satisfying the first element of this claim is difficult, even at the pleadings stage. In *Howell,* the court stated that "the 'requirements of the rule are rigorous, and difficult to satisfy.'" 81 N.Y.2d at 122, 596 N.Y.S.2d 350, 612 N.E.2d 699 (internal citations omitted); *see also Ross v. Mitsui Fudosan, Inc.,* 2 F.Supp.2d 522, 532 (S.D.N.Y.1998) ("A review of the applicable case authorities shows the heavy burden imposed on a plaintiff to satisfy the first element of this test.") (citations omitted). Thus, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Stuto,* 164 F.3d at 827 (quoting *Howell,* 81 N.Y.2d at 122, 596 N.Y.S.2d 350, 612 N.E.2d 699) (quoting *Murphy v. American Home Prods. Corp.,* 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983)). In *Stuto,* the court noted that of those cases that have recognized a claim for intentional infliction of emotional distress, "all involved some combination of public humiliation, false accusations of criminal or heinous conduct, verbal abuse or harassment, physical threats, permanent loss of employment, or conduct contrary to public policy." *Id.* at 828 (citations omitted).

 The requirement that defendants engage in extreme and outrageous conduct

"serves the dual function of filtering out petty and trivial complaints that do not belong in court, and assuring that plaintiff's claim of severe emotional distress is genuine." *Howell,* 81 N.Y.2d at 121, 596 N.Y.S.2d 350, 612 N.E.2d 699. "Whether the conduct alleged may reasonably be regarded as so extreme and outrageous as to permit recovery is a matter for the court to determine in the first instance." *Stuto,* 164 F.3d at 827 (citing Restatement (Second) of Torts § 46 cmt. h (1965)).

Plaintiffs allege that UCS repeatedly called plaintiffs at unusual hours in an attempt to collect their daughter-in-law's debt. Complaint at ¶ 108. The Court finds that this conduct is not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Stuto,* 164 F.3d at 827 (citations omitted).[12]

Plaintiffs cite *Teng v. Metropolitan Retail Recovery Inc.,* 851 F.Supp. 61 (E.D.N.Y.1994), in support of their position that UCS' conduct is extreme and outrageous. In *Teng,* the court addressed the issue of whether damages for emotional distress were recoverable for violations of the FDCPA. The court found that they were because, *inter alia,* "[t]he wrong sought to be punished by [the FDCPA] is similar in nature to a tort cause of action based on outrageous and reckless conduct and is the type of wrong in which damages for emotional distress have been traditionally permitted." *Id.* at 69. Although *Teng* stands for the proposition that emotional distress damages are recoverable in cases alleging a violation of the FDCPA, it cannot be read so broadly as to state that a violation of the FDCPA necessarily states a claim for the tort of intentional infliction

---

**12.** Plaintiffs point out that N.Y. Gen. Bus. Law § 601(6), *discussed supra,* prohibits UCS' conduct. Section 601(6) prohibits communications "with the debtor or any member of his family or household with such frequency or at such unusual hours or in such a manner as

can reasonably be expected to abuse or harass the debtor." N.Y. Gen. Bus. Law § 601(6). While UCS' conduct may violate Section 601(6), this does not necessarily mean that it constitutes extreme and outrageous conduct.

of emotional distress. There may indeed be cases where conduct constituting a violation of the FDCPA is so extreme and outrageous that it also gives rise to liability for the tort of intentional infliction of emotional distress. However, this is simply not one of those cases.[13]

Accordingly, UCS' motion to dismiss Count VI of the complaint is granted.

### CONCLUSION

For the foregoing reasons, defendants' motions to dismiss are granted, and the Class Action First Amended Complaint is dismissed in its entirety.

It is so ordered.

---

**13.** Plaintiffs also rely on *Lane v. Marine Midland Bank, N.A.,* 112 Misc.2d 200, 446 N.Y.S.2d 873 (Sup.Ct. Erie County 1982) and *Long v. Beneficial Finance Co. of New York, Inc.,* 39 A.D.2d 11, 330 N.Y.S.2d 664 (4th Dep't 1972). Both cases are inapposite. *Long* held that the tort of intentional infliction of emotional distress was actionable in the debtor-creditor relationship, but it said nothing about what conduct is sufficiently outrageous to satisfy such a claim. 39 A.D.2d at 12–14, 330 N.Y.S.2d 664. In *Lane,* the court left it to the jury whether the alleged conduct was sufficiently outrageous, without considering whether it was such as matter of law. 446 N.Y.S.2d at 875–76. Furthermore, neither case cited by plaintiffs relied on the strict standard for evaluating intentional infliction of emotional distress claims on which this Court relies.