**PHONETEL TECHNOLOGIES, INC., et al., Plaintiffs,**

v.

**NETWORK ENHANCED TELECOM d/b/a Network IP., Defendant.**

**No. 2:01–CV–274(TJW).**

United States District Court,
E.D. Texas,
Marshall Division.

March 11, 2002.

Jason Brandt Stephens, Nix Patterson & Roach LLP, Daingerfield, TX, for plaintiffs.

Gary Ray Powell, Locke Liddell & Sapp, Dallas, TX, Charles Homer Clark, Clark Lea Rutter & Logsdon, Tyler, TX, Richard T. Thomson, Lapp Libra Thomson Stoebner, Minneapolis, MN, for defendant.

## MEMORANDUM OPINION AND ORDER

WARD, District Judge.

Before the Court is Defendant Network Enhanced Telecom's ("NET") Motion to Dismiss Plaintiffs' Complaint (# 3). Having considered the motion, Plaintiffs' response, and the applicable law, the Court GRANTS Defendant's motion and DISMISSES Plaintiffs' claims with prejudice.

**Background**

Plaintiffs Phonetel Technologies, Inc, et al. ("Phonetel") own and operate payphones throughout the State of Texas. In the telecommunications industry, Plaintiffs are known as payphone service providers ("PSPs"). Defendant NET is a switch-based reseller of voice and data services. As part of its business, NET resells telephone services to prepaid calling card distributors that in turn market and sell their own branded prepaid calling cards. Thus, when an individual places a calling card call from a payphone using a prepaid calling card from one of NET's customers, the call proceeds as follows: 1) the caller picks up the payphone and makes a call using a calling card; (b) the call is picked up by the local exchange carries ("LEC"), such as Southwestern Bell; (c) the call is handed off to the interexchange carrier ("IXC"), such as AT & T; (d) the IXC hand the call off to NET, the switch-based reseller; (e) NET switches the call through its customer's account, the calling card distributor; (f) the call is handed off to the LEC on the recipient's side of the call; and (g) the call is delivered to the actual party being called.

Plaintiffs bring this action seeking compensation from NET for telephone calls placed from its payphones utilizing prepaid calling cards sold by NET's customers. Plaintiffs allege NET's failure to compensate them for calls violates FCC regulations found at 47 C.F.R. 64.1300 et seq. and is actionable under the Federal Telecommunications Act, 47 U.S.C. §§ 206, 207, & 276. However, because no private right of action exists for violations of the FCC regulations at issue, the Court GRANTS Defendant's Motion to Dismiss.

**Discussion**

47 C.F.R. § 64.1300 requires every carrier to whom a completed call from a payphone is routed to compensate the payphone service provider. The FCC promulgated this regulation pursuant to 47 U.S.C. § 276, which commands the Commission to prescribe regulations to "establish a per call compensation plan to ensure that all payphone service providers are fairly compensated for each and every completed...call using their payphone...." Because § 276 only commands the Commission to promulgate regulations, it cannot be violated by a party other than the FCC. Furthermore, § 276 does not pro-

vide a private right of action for violations of the FCC regulations it orders. *Precision Pay Phones v. Global Crossing Telecommunications, Inc.,* No. C01–02901, 2001 WL 1456766, at *1 (N.D.Cal. Nov.6, 2001).

Rather, §§ 206 and 207 of the Telecommunications Act govern private rights of action. Taken together, these sections provide that suit may be brought either before the FCC or in federal court, but not both, for damages resulting from a common carrier's violation of specific provisions of *the Telecommunications Act. Conboy v. AT & T Corp.,* 84 F.Supp.2d 492, 498 (S.D.N.Y.2000); *Incomco v. Southern Bell Tel. & Tel. Co.,* 558 F.2d 751, 752–53 (5th Cir.1977). These sections also do not create an express cause of action for violations of FCC regulations created pursuant to the Act, but only the Act itself. *See Precision Pay,* No. C01–02901, 2001 WL 1456766, at *1; *Conboy,* 84 F.Supp.2d at 500, *see also Maydak v. Bonded Credit Co. Inc.,* 96 F.3d 1332, 1334 (9th Cir.1996). Thus, because § 276 is not subject to violation by a party other than the FCC, and because no express private right of action exists for violations of the FCC regulations which Plaintiffs allege were violated, Plaintiff's claims for violations of 47 C.F.R. § 64.1300 may only survive if an implied right of action exists. The Court finds no such implied right.

In *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Supreme Court established a four-part test to determine whether a *statute* contains an implied private right of action.[1] Primary, however, among those four factors is whether the drafters intended to create a private right of action. *Touche Ross & Co. v. Redington,* 442 U.S. 560, 575–76, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). If the Court does not find an intent to create a private right of action, no implied private right can exist. *Id.* Here, no intent to create a private right of action is apparent.

An examination of FCC regulations promulgated pursuant to the Telecommunications Act reveals that when the drafters wanted to prohibit or provide for private rights of actions they did so expressly in the regulation itself. *See, e.g.,* 47 C.F.R. § 79.1 (regulating closed captioning of video programming and stating, "[n]othing in this section shall be construed to authorize any private right of action to enforce any requirement of this section. The Commission shall have exclusive jurisdiction with respect to any complaint under this section."); *see also* 5 C.F.R. § 1305.5 (prohibiting private rights of action); 8 C.F.R § 208.18(e)(3) (same); 20 C.F.R. §§ 627.500(d), 628.525, and 636.1(c)(3) (same); 40 C.F.R. § 300.400(i)(3) (same); 45 C.F.R. § 98.43(e) (same); 49 C.F.R. § 219.17(b) (same); 17 C.F.R. § 200.1(j) (providing for private rights of action). Furthermore, in its In the *Matter of Implementation of the Pay Telephone Reclassification and Compensation Provisions of*

---

**1.** The Court has serious concerns whether an FCC regulation could ever contain an implied private right of action in the federal district courts. Because Art. III, Section 2 of the Constitution bestows upon Congress the authority to confer some or all of the judicial power upon the inferior federal courts, it is questionable whether FCC regulations could create a private right of action for their violation absent a specific congressional delegation of authority to do so in a charging statute. *See Chair King, Inc. v. Houston Cellular Corp.,* 131 F.3d 507, 510–11 (5th Cir.1997) (discussing the constitutional underpinnings of inferior federal court jurisdiction). Since the Court does not find an implied right of action to exist under the FCC regulations at issue in this case, assuming one could, it need not reach this issue. Nevertheless, constitutional concerns such as these naturally crop up when parties claim to find private rights of action in the pronouncements of bodies other than Congress.

*the Telecommunications Act of 1996*, CC Docket 96–128, Report and Order, 11 FCC Rcd. 20541, 1996 WL 547458 (rel.9/20/96), the Commission expressly anticipated that the remedy for violating the compensation regulations would be the filing of a complaint with the Commission; there is no mention of a possible private right of action. Id. at ¶¶ 112–114.[2] Thus, because of the absence of an express private right of action in 47 C.F.R. § 64.1300, and the Commission's specific mention of the FCC complaint procedure as the remedy for the alleged conduct Plaintiffs attempt to sue upon, the Court finds the drafters did not intend a private right of action to exist for the violations Plaintiffs allege. Accordingly, no implied right of action exists for violations of 47 C.F.R. § 64.1300 et seq.

## Conclusion

Therefore, because 47 U.S.C. § 276 is not amenable to violation by a party other than the FCC, and because no private right of action exist for violations of 47 C.F.R. § 64.1300 et seq., the Court GRANTS Defendant's Motion to Dismiss and DISMISSES Plaintiffs' claims with prejudice.

---

**2.** Paragraph 114 states, "Second, we conclude that mandating a penalty on the LEC, as urged by APCC, for failing to respond to verification request in a timely manner, is not necessary when the Commission's complaint process is available. Similarly, the complaint process is available to PSPs for instances of a carrier's wilful failure to pay compensation, as discussed by the RBOCs."